**Motion for Rehearing Denied; Opinion of February 15, 2018 Withdrawn; Affirmed and Substitute Opinion filed June 12, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00430-CV

## IN THE MATTER OF THE MARRIAGE OF CLIFFORD LAYNE HARRISON AND CONNIE VASQUEZ HARRISON

**On Appeal from the 311th District Court
Harris County, Texas
Trial Court Cause No. 2006-68864**

## S U B S T I T U T E   O P I N I O N

Appellant's motion for rehearing is denied. We withdraw our February 18, 2018 opinion and substitute the following in its stead. Our judgment remains unchanged.

Clifford Layne Harrison ("Cliff") and Connie Vasquez Harrison ("Connie") are before this court for the second time on direct appeal from proceedings incident

to divorce.[1] In a previous appeal on the merits, this court affirmed the divorce decree insofar as it granted the Harrisons' divorce, but we reversed the remainder of the decree and remanded for a new trial. *See Harrison v. Harrison*, 367 S.W.3d 822, 835 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("*Harrison I*"). This appeal follows the bench trial on remand. Connie challenges the trial court's final order and decree on division of property and determination of conservatorship. In three issues, Connie contends the trial court abused its discretion by: (1) permitting her trial counsel to withdraw, over her objection, approximately four weeks before trial and without granting a trial continuance; (2) naming Cliff sole managing conservator of the Harrisons' two children; and (3) dividing the marital estate. After careful review of the record, we affirm.[2]

---

[1] Our court has addressed collateral issues arising from these divorce proceedings in several related proceedings, including original proceedings. *See In re Harrison*, No. 14-15-00370-CV, 2015 WL 5935816 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, orig. proceeding) (per curiam, mem. op.); *In re Harrison*, No. 14-15-00545-CV, 2015 WL 5829791 (Tex. App.—Houston [14th Dist.] Oct. 6, 2015, orig. proceeding) (per curiam, mem. op.); *In re Harrison*, No. 14-15-00273-CV, 2015 WL 3637497 (Tex. App.—Houston [14th Dist.] June 11, 2015, orig. proceeding) (per curiam, mem. op.); *In re Marriage of Harrison*, No. 14-14-00915-CV, 2015 WL 1869478 (Tex. App.—Houston [14th Dist.] Apr. 23, 2015, no pet.) (per curiam, mem. op.); *In re Harrison*, No. 14-15-00054-CV, 2015 WL 602287 (Tex. App.—Houston [14th Dist.] Feb. 12, 2015, orig. proceeding) (per curiam, mem. op.).

[2] During the pendency of this appeal, Connie filed several motions. We have carried with the case Connie's "Motion to Order Supplementation of the Reporter's Record with Missing Exhibits," filed on January 16, 2018. We deny Connie's motion to supplement for the following reasons.

The appellate court, the trial court, or a party may request that the record be supplemented with items that were part of the trial record but omitted from the appellate record. *See* Tex. R. App. P. 34.6(d). In Connie's motion, she asks this Court to order the court reporter to supplement the record with her exhibits numbered 221-251, which she contends were tendered to the trial court during her offer of proof. The record reflects, however, that Connie never tendered these exhibits to the trial court during the offer of proof but only exchanged the cited exhibits with opposing counsel. The court reporter expressly noted that, during the offer of proof, these exhibits were "exchanged and discussed," but "none were formally identified, offered or admitted by the Court." Additionally, Connie did not file a formal bill of exception, which is necessary to complain about a matter that would not otherwise appear in the record. Tex. R. App. P. 33.2. The record cannot

## Introduction

A trial judge maintains considerable discretion to control disposition of cases "with economy of time and effort for itself, for counsel, and for litigants."[3] Today's case presents numerous challenges to a trial court's discretionary rulings that, in many respects, balance a litigant's rights against the trial court's broad authority to enforce orders and constrain the litigant's dilatory or obstructive behavior. A litigant's dilatory conduct is especially concerning in a case involving the custody of children.[4] This is so because, in a case such as today's that involves conservatorship, access, and possession decisions, the children's best interest must remain the court's primary concern. *See* Tex. Fam. Code § 153.002. Conservatorship, access, and possession of the Harrison children have been matters of debate since October 2006, when Cliff initially filed for divorce from Connie. The children, who were six and two years old when this case began, have now

---

be supplemented with items that were not part of the trial record. *See* Tex. R. App. P. 34.6(d) (providing for supplementation of reporter's record with *omitted* items).

Further, in the motion, Connie implicitly acknowledges that exhibits 221-251 were not part of her offer of proof because she argues that the trial court "shut down the offer of proof after exhibit 220 and instructed Connie to leave the courtroom." Connie did not raise an issue in her opening brief challenging the trial court's handling of Connie's offer of proof or complaining about the absence of exhibits 221-251 from the record. Because Connie asserts this argument for the first time in her post-submission filings, we do not consider it as a ground for reversal. *See Smith v. Dass, Inc.*, 283 S.W.3d 537, 543 n.4 (Tex. App.—Dallas 2009, no pet.) (declining to address issue raised for first time in post-submission filing); *Nip v. Checkpoint Sys., Inc.*, 154 S.W.3d 767, 772 n.3 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting that argument raised for first time in post-submission brief in response to questioning at oral argument was waived); *City of Houston v. Precast Structures, Inc.*, 60 S.W.3d 331, 340 n.4 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (refusing to consider argument raised for first time in "letter brief filed over a month after oral argument, purportedly in response to a submission of supplemental authority").

[3] *See King Fisher Marine Serv., L.P. v. Tamez*, 443 S.W.3d 838, 843 (Tex. 2014) (quoting *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam)).

[4] *Cf. Young v. Young*, No. 03-14-00720-CV, 2016 WL 7339117, at *8 (Tex. App.—Austin Dec. 15, 2016, no pet.) (mem. op.) ("Such offensive and dilatory conduct is particularly unacceptable in a child-custody case, in which the status of a child remains uncertain until entry of a final order.")

reached the ages of seventeen and thirteen, with the upheaval of their parents' divorce and the ongoing custody dispute overshadowing the vast majority of their lives. We are now presented with a new appeal involving challenges to custody decisions and other rulings.

## Background[5]

Connie and Cliff Harrison were married in February 2000. Both are licensed attorneys. They have a son who was born in 2000 ("J.H.") and a daughter who was born in 2004 ("V.H."). Connie and Cliff ceased living together in January 2006; Cliff filed for divorce on October 30, 2006. *See Harrison I*, 367 S.W.3d at 823. From October 2006 to February 2008, Connie was represented in the divorce proceeding by six different attorneys, and she occasionally represented herself. *See id.* at 823-24. In January 2010, with trial set to begin in March, Connie's trial counsel filed a motion to withdraw based on Connie's inability to pay attorney's fees. Connie opposed her trial counsel's withdrawal and sought interim attorney's fees. After a hearing, the trial court permitted Connie's counsel to withdraw and denied Connie's motion for interim fees. Connie filed a motion for continuance, but the trial court denied the motion. In March 2010, the trial court called the case for trial, and Connie announced that she was "not ready." Nonetheless, the case proceeded to a jury trial with Connie representing herself.

---

[5] Our briefing rules require the appellant's brief to "state concisely and without argument the facts pertinent to the issues or points presented" and to support the stated facts with record references. *See* Tex. R. App. P. 38.1(g). Many of Connie's factual assertions are argumentative and not supported by record references to evidence admitted at trial. Rather, the bulk of her factual assertions refer to evidence the trial court deemed inadmissible and is before us only as part of an offer of proof. "[W]e do not consider factual assertions that appear solely in briefs and are not supported by the record." *Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006). Hence, our recitation of background facts is based on evidence admitted at trial, viewed under the appropriate standard of review, and our prior merits opinion.

4

Following trial, the court signed a final decree of divorce on June 21, 2010. Connie appealed the judgment to this court. Holding the trial court erred by denying a continuance when allowing Connie's trial counsel to withdraw, we reversed and remanded for a new trial in April 2012.[6] However, we affirmed the divorce between the parties as of the date of the decree. Since our remand in April 2012, this case has been preferentially set for trial a number of times, and Connie has alternated between periods of self-representation and representation by numerous attorneys, all of whom have withdrawn.

In January 2014, after participating in court-ordered mediation, the parties signed a mediated settlement agreement (the "MSA"). Connie moved to set aside the MSA the following March, asserting that she had been a victim of family violence, which impaired her ability to make decisions, and the MSA was not in the best interest of J.H. and V.H. She also asserted that "there has been a change in circumstances since the signing of the mediated agreement." But on the motion of the children's amicus attorney, the trial court signed an interim order on parent-child issues incorporating the terms of the MSA on April 10 (the "Interim Order"). Consistent with the MSA, the Interim Order named Connie and Cliff joint managing conservators of J.H. and V.H. The Interim Order also provided Connie the exclusive right to designate the children's residence within Harris County, while providing Cliff extended possession of the children.

Connie failed to fully comply with the trial court's Interim Order, as well as other orders. As Connie's violations are relevant to our analysis of the issues she presents, we summarize pertinent examples from the record. In March 2014, Second Baptist School notified Cliff and Connie that the children would not be permitted to

---

[6] Because we found the continuance issue dispositive, we did not address Connie's remaining points. *Harrison I*, 367 S.W.3d at 835.

enroll again the following school year because the "continued legal dispute concerning possession and other matters . . . has required considerable focus by school employees and has on too many occasions distracted school staff from the school's need to focus on the spiritual and educational needs of all students at the school." Thereafter, in May, the trial court signed additional temporary orders authorizing Cliff to enroll the children in private school. Under the terms of that order, if private school was unavailable, then the children were to attend the public schools to which Cliff's home was zoned—Briargrove Elementary and Grady Middle School. Despite these orders, Connie unilaterally enrolled J.H. and V.H. in schools other than those specified by the orders. Further, Connie also violated the orders by withholding J.H. and V.H. from Cliff during his designated visitation times on several occasions. During the summer of 2014, Connie prevented Cliff from seeing or speaking with J.H. and V.H. for numerous weeks. Cliff filed numerous contempt motions against Connie for violating the court's visitation orders.

On August 4, 2014, Cliff filed his first amended petition for division of property and to establish a parenting plan. In this petition, Cliff stated:

> The parties and the AMICUS attorney mediated . . . on January 29, 2014. A mediated settlement agreement on the parent-child issues was agreed to and signed by the parties and the AMICUS attorney. Since the signing of that mediated settlement agreement, a material and substantial change has occurred with regard to the children and/or the parties, and as such, the agreements pertaining to the children are not in the best interest of the children. Respondent has engaged in a course of conduct that is injurious to the welfare of the children, and this Court should make appropriate orders for the protection of the children.

As to conservatorship of the children, Cliff alleged that the continuation of Connie and he as joint managing conservators was no longer in the children's best interest, and he requested that, on final hearing, the court appoint Cliff sole managing conservator.

6

Thereafter, on August 19, Cliff filed a motion to set aside the MSA or to modify the Interim Order. Cliff alleged that Connie violated the trial court's orders on several occasions, including withholding J.H. and V.H. during Cliff's designated periods of access, failing to allow communications between Cliff and the children, and engaging in a course of conduct "designed with the specific intent of alienating the children from their father." Cliff sought to be named as the children's temporary sole managing conservator. After a hearing on September 3, the trial court signed an order granting Cliff's motion for temporary orders.[7] Finding the following actions necessary for the safety and welfare of J.H. and V.H. and in their best interests, the trial court: (1) removed Connie as a joint managing conservator, (2) appointed Cliff temporary sole managing conservator, (3) designated Cliff with "the exclusive right to all periods of possession and access of the children," and (4) barred Connie from "any periods of possession and/or access to the children until further order of the Court or by written agreement of the parties and attorneys." At some point before trial, the trial court apparently allowed Connie supervised visitation with J.H. and V.H., although our record does not contain an order so specifying.

Meanwhile, on September 2, Cliff filed a motion for enforcement of possession and access, in which he alleged that Connie had violated the court's orders concerning possession of and access to the children. In this motion, he requested that Connie be held in contempt, jailed, and fined for various alleged violations. Connie appeared at the hearing on Cliff's motion for enforcement on October 16. In an enforcement order signed October 24, the court: (1) found Connie committed eleven violations of its orders; (2) held Connie in criminal contempt for the violations; (3) fined Connie $3,000; and (4) ordered Connie to pay Cliff's

---

[7] Connie did not appear at the September 3 hearing despite being sworn to reappear that date. Connie's trial counsel appeared.

reasonable and necessary attorney's fees and costs of $25,554.30.  The trial court ordered Connie confined to the Harris County Jail for 120 days, but suspended Connie's confinement and placed her on community supervision contingent on Connie paying the attorney's fees and fines and complying with the court's orders.[8] When Connie failed to pay the fees and fines as ordered, Cliff moved to revoke her probation.  Cliff's motion to revoke was set for hearing on December 18.

In early December 2014, Connie retained new counsel.  At that time, Connie faced several hearings on Cliff's motions for enforcement and revocation, as well as a January 20, 2015 trial setting.  On December 15, however, Connie's counsel filed a motion to withdraw and a motion for continuance.  Both motions were set for hearing on December 18 along with Cliff's motion to revoke.[9]  Following the December 18 hearing, the court found Connie had violated the terms of her community supervision and ordered Connie jailed for violating the trial court's October 24 order.[10]  After hearings on December 18, 22, and 23, the trial court orally denied the motion for continuance and granted Connie's counsel's motion to withdraw.  We discuss those proceedings in more detail below.

On January 9, 2015, the trial court conducted a pretrial conference.  At that hearing, the trial court ordered Connie and Cliff to exchange with each other a complete set of trial exhibits before 5:00 p.m. that day at Cliff's counsel's office. The trial court further ordered Connie and Cliff to provide copies of their trial exhibits to the amicus attorney by 5:00 p.m. on January 12.  At a pretrial hearing on

---

[8] Cliff subsequently filed additional motions for enforcement and contempt, but they are not included in our record.

[9] Our record does not contain these three motions.

[10] This court subsequently held the trial court's October 24th enforcement order was void on due process grounds and held all subsequent orders based on that void order were likewise void, including the trial court's order committing Connie to jail.  *See Harrison*, 2015 WL 5935816, at *3-5.

January 16, the trial court learned that Connie failed to exchange exhibits with Cliff on January 9, and failed to serve her exhibits on the amicus attorney by January 12. When questioned by the court, Connie acknowledged she made no attempt to exchange exhibits with either Cliff or the amicus attorney at any time before the January 16 hearing. Both Cliff and the amicus attorney provided their exhibits to Connie. The trial court then ordered Connie to provide her exhibits to Cliff by 1:45 p.m. that day, recessing proceedings to provide Connie time to comply. Proceedings continued at 2:00 p.m. But Connie had only an original copy of her exhibits and was unable to tender copies to opposing counsel or the amicus attorney. Finding that Connie failed to comply with repeated orders to tender exhibits to opposing counsel and the amicus attorney, the trial court excluded Connie's exhibits from evidence at the scheduled jury trial.

The trial court instructed all parties to appear at 8:30 a.m. on January 20 to resolve any outstanding pre-trial matters then begin trial. Connie was not represented by counsel and she failed to appear at 8:30 a.m. Cliff, his counsel, and the amicus attorney appeared timely. At approximately 9:30 a.m., Cliff, the only party who filed a jury demand and paid a jury fee, waived his right to jury trial and requested a bench trial. Connie still was not present. Testimony commenced to the bench. Connie did not arrive in the courtroom until about 10:15 a.m. At that time, Cliff was testifying. Connie notified the trial court that she had filed a motion to recuse the trial judge. The trial court denied the motion to recuse, but recessed proceedings until the administrative judge could rule on the motion. After the administrative judge denied the motion to recuse, proceedings recommenced around 1:30 p.m. At that time, Connie objected to proceeding with trial without a jury. The trial court overruled her objection and proceeded with the bench trial.

9

Cliff testified to facts bearing on the relevant disputed issues, predominantly custody. Cliff provided examples of Connie's conduct that Cliff considered dishonest and manipulative. For instance, Cliff testified that Connie attempted to buy an expensive home without Cliff's consent or knowledge; Connie forged her name on checks, cashed them, and then lied about it; and Connie deceived Cliff about various home improvements and credit cards. According to Cliff, Connie repeatedly violated court orders regarding J.H. and V.H., by secreting the children from Cliff, attempting to alienate them from Cliff, enrolling them in unapproved schools for the 2015-2016 school year, and communicating with them when she had been ordered to refrain from doing so. Cliff also described several physical altercations with Connie.[11]

Connie cross-examined Cliff extensively regarding whether he called her names or behaved inappropriately toward her in front of J.H. and V.H. after the two separated. Cliff, for the most part, acknowledged he had frequently spoken to Connie in a derogatory manner, but denied that he had ever done so in front of the children. Cliff acknowledged that he had likely sent Connie disparaging text messages. He repeatedly denied that he had ever "beaten up" Connie in front of J.H. or V.H.

Another key issue involved Second Baptist School's decision declining enrollment to the Harrison children for the 2015-2016 school year. The lower school principal, Tamara Gallagher, testified via deposition that J.H. and V.H. were not permitted to re-enroll because of Connie's repeated school policy violations. Gallagher explained that Connie frequently violated school policy. For example,

---

[11] We detail the parties' divergent accounts of these physical altercations below, when we address Connie's complaint that the trial court improperly named Cliff sole managing conservator of their children despite his alleged history of domestic violence.

Connie interrupted teachers or pulled the children out of class during school hours, arrived late for pick-up but refused to sign a late form, failed to sign in when she arrived for school visits during school hours, argued with school personnel to alter disciplinary decisions concerning the children, and frequently called to change pick-up instructions very close to dismissal times. Gallagher stated that the school never had a problem with Cliff. She agreed that but for the repeated violations of school policies by Connie, J.H. and V.H. would still be permitted to attend Second Baptist School.

Cliff testified that the children's inability to continue attending Second Baptist School was "very hard" on the children because it was the only school they had ever attended. Cliff enrolled J.H. and V.H. in counseling; he enrolled in counseling himself on the recommendation of the daughter's counselor. V.H.'s counselor testified that she believed Connie's conduct warranted supervised visitation:

> I feel that the supervised visits should continue. . . . [B]ased on what I've experienced or been made aware of throughout this proceeding, there was [sic] a lot of rules that weren't being followed during visitation and around visitation, and a lot of distress around visitation handoffs and things of that nature, and I think the structure of the supervised visits provides a level of comfort and stability for [V.H.] . . . .
>
> I base my recommendation [of continuing supervised visitation] on lots of things; not just what the father says and what the mother says but the clinical presentation of the child, the -- my experience during therapy over the weeks. *And in my clinical opinion, supervised visits are in the best interest for [V.H.] at this time. . . .*

(Emphasis added). J.H.'s counselor also testified. He stated that J.H. has no fear of either parent, loves them both very much, but would like this case to be over. J.H. also expressed a strong preference to return to Second Baptist School for the next school year.

11

According to Cliff, Connie has no sense of boundaries or appropriate behavior when it comes to dealing with or confronting people. She inappropriately inserts herself into situations, such as teacher-student relationships. Cliff testified that Connie could be "manipulative" in dealing with the children. Cliff stated that the children seem to be benefiting from their therapy. He indicated that there are "no major" concerns between J.H. and V.H. and the children of Cliff's then-fiancée, Heather Fitzsimmons—they were working on blending the family. Cliff explained that J.H. and V.H. are both aware of the ongoing proceedings, but he does not discuss it with them. He acknowledged that the children probably know more about the proceedings than they should. Cliff stated that he avoids altercations with Connie by simply avoiding being around her alone. He believed that he can control himself around Connie, but he had concerns about whether Connie can control herself around him. Connie, on the other hand, stated that she did not think she and Cliff could operate as joint managing conservators of the children based on Cliff's "rage" towards her.

Connie's sister, Sue Yen Vasquez Davis, testified via deposition. Connie and Davis had not spoken in several years. Davis agreed that Cliff had "always demonstrated good judgment" around J.H. and V.H. She described Cliff as a "good father," "nurturing," and "patient." She had no concerns about Cliff's ability to raise J.H. and V.H. She also agreed that she would have "no hesitancy" in leaving her own children in Cliff's care. When asked similar questions regarding Connie, Davis notably stated she had either "no comment" or "no opinion." For example, Davis had no comment on whether Connie was physically violent, had a propensity to initiate arguments, had a "paranoid tendency," or was psychologically stable. Davis would offer no opinion as to whether Connie was deceptive or combative. She also

had no opinion regarding her feelings toward Connie. When asked if she would leave her own children in Connie's care, Davis responded, "No."

During trial, the trial court afforded Cliff and Connie equal, but reasonably limited, time to present their evidence and cross-examine witnesses. During the trial, the trial court repeatedly reminded Connie how much time she had used and how much time remained. Despite the trial court's reminders, when Connie's allotted time expired, Connie argued she lacked sufficient time to present all her desired evidence. The court granted Connie an additional hour to present further evidence.

After hearing evidence and the parties' arguments, the trial court orally rendered judgment on February 12, 2015, and signed the final judgment on March 26, 2015. The trial court appointed Cliff sole managing conservator of J.H. and V.H. and named Connie possessory conservator. The court ordered that Connie have supervised possession of J.H. and V.H. for four hours, twice a month. The court further enjoined both parties from making disparaging remarks about the other, and from discussing this or any future litigation regarding conservatorship issues in the presence of J.H. and V.H. Finally, as is relevant to this appeal, the trial court awarded Cliff the former marital home. Connie timely appealed.

**Issues and Standard of Review**

Connie challenges (1) the trial court's decision to permit Connie's counsel to withdraw one month before trial without granting a continuance, (2) the trial court's conservatorship determination, and (3) the trial court's division of property. All of these rulings are subject to an abuse-of-discretion standard of review. *See Harrison I*, 367 S.W.3d at 826 (abuse-of-discretion standard applies to both grant of motion to withdraw and denial of motion for continuance); *Baker v. Baker*, 469 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("The trial court is afforded great discretion when making [conservatorship] determinations, and we review the trial court's decision for an abuse of that discretion."); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (explaining that a party seeking to disturb a trial court's division of property "must show the trial court clearly abused its discretion by a division or an order that is manifestly unjust and unfair").

Under this standard, we cannot "overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). Further, we do not substitute our judgment for the trial court's judgment, even if we would have reached a different conclusion. *Id.* A trial court does not abuse its discretion when some evidence reasonably supports its decision. *Id.* Legal and factual sufficiency of the evidence are not independent grounds of error under the abuse-of-discretion standard, but are relevant factors in assessing whether the trial court abused its discretion. *Stavinoha*, 126 S.W.3d at 608.

Bearing in mind this discretionary standard of review, we turn to Connie's specific issues in this appeal. We first address her complaints concerning the withdrawal of her counsel, then turn to her issues concerning custody of J.H. and

V.H., and finally address her challenge to the trial court's division of the marital estate.

**Withdrawal of Counsel and Denial of Trial Continuance**

In her first issue, Connie asserts that "the trial court abused its discretion in permitting the last minute withdrawal of attorney Sarah Razavi Zand on the eve of trial, while at the same time denying any continuance." We begin our analysis by summarizing the relevant procedural history.

**A.     Facts Regarding the Withdrawal of Connie's Counsel**

Cliff filed for divorce from Connie on October 30, 2006. From that date until the parties' first divorce trial in March 2010,[12] Connie employed at least six different lawyers, each of whom withdrew for various reasons. *See Harrison I*, 367 S.W.3d at 823-25 (detailing Connie's legal representation history during that time period). When not represented by counsel, Connie represented herself. She also represented herself at the first divorce trial.

Post-remand, Connie retained a number of new attorneys in succession, each of whom withdrew. On September 5, 2014, Connie consented to the withdrawal of her then counsel of record. At that time, trial was preferentially set for mid-January 2015. Connie represented herself from September until early December 2014, when she retained Sara Razavi Zand as counsel. When Connie retained Razavi Zand, upcoming settings included the December 18, 2014 hearing on Cliff's motions to revoke probation and for enforcement, and a January 20, 2015 trial setting. On December 15, 2014, less than two weeks after Connie had retained her, Razavi Zand

---

[12] The first divorce trial began in February 2008, but Connie and Cliff asked the trial court to recess proceedings so they could attempt to reconcile. *See Harrison I*, 367 S.W.3d at 824. The attempted reconciliation was unsuccessful, and the divorce trial recommenced in March 2010. *Id.*

filed a motion to withdraw as Connie's counsel, as well as a motion for continuance, neither of which are contained in our record.

1. *The December 18 hearing*

At the December 18 hearing, the trial court first heard Cliff's motion to revoke Connie's probation. Razavi Zand represented Connie on the motion to revoke probation. After hearing testimony from Connie and Cliff, and after considering argument of counsel, including Razavi Zand on Connie's behalf, the trial court ordered her probation revoked and committed her to 120 days in the Harris County jail.

After the court revoked Connie's probation, Razavi Zand requested a continuance of the preferential trial setting so that Connie could obtain new counsel. Cliff objected to further continuances: "[T]his is our fourth preferential trial setting just since the remand. It does not include the prior trial settings. Every time we get close to trial, we get the same motion for continuance. We get the same motion for fees, and then we get a withdrawal. It happens every single time." The children's amicus attorney, while not urging that the continuance be denied, noted, "I do believe that these children deserve finality, just like I said back in 2010; and here we are four years down the road and they still don't have that finality. [J.H.] has been in litigation for more than half his life, and he knows it. He's tired of it; and, so, I think the children deserve to be children and move about." The trial court denied the motion for continuance.

Razavi Zand then presented her motion to withdraw, which Connie (and Cliff) opposed. Razavi Zand articulated her reasons for withdrawing as follows:

> At this time, Your Honor, there is a big conflict of interest. There are reasons that I cannot at this point ethically and -- I cannot ethically

16

represent [Connie] pursuant to our Disciplinary Rules . . . that we follow, Your Honor.

There's a conflict of interest. The conflict of interest arose on Monday, and the conflict of interest -- there is now a bigger conflict of interest that has occurred within the past 48 hours that would prevent me from properly representing [Connie] moving forward. . . .

The conflict that I'm referring to is a conflict between my client and I that prevents me from properly representing her.

As far as, like I said, without going into the events that have occurred within the past 48 hours, more so within the past 48 hours, this is not a conflict of interest in the traditional sense that there is another client that it conflicts or anything like that. It's a personal conflict that has arisen between my client and myself where I cannot ethically and morally represent -- and maybe I shouldn't use the word "morally." I can't properly represent her in my personal capacity, and my personal interests are -- would be put in front of my client's interests at this time. . . .

The basis of my motion to withdraw would be that I cannot ethically and properly represent her with this conflict that has arisen between my client and myself. Nothing outside of my client and myself.

The trial court initially granted Razavi Zand's motion to withdraw, explaining:

I want to be very clear that I don't want to create a policy in this court of letting attorneys withdraw from representing clients that they were recently retained by. However, if this is going to be as you [Razavi Zand], as an officer of the court, have conveyed to this Court that it would subject you to ethical violations with the State Bar, certainly I'm not going to require that you remain on the case.

However, I have denied the continuance in this matter, Ms. Harrison. So, and you have an observer here in court today and I don't know the extent of what you have in the works, but you need to be prepared for trial in January.

Cliff's counsel then asked the trial court to reserve its ruling until Connie had an opportunity to speak to an observer—an attorney—to determine if he would agree

17

to represent Connie. The court agreed to withhold ruling and hear further argument on Razavi Zand's motion to withdraw on December 22, when the court had scheduled a jail review hearing on Connie's contempt sentence.

## 2. *The December 22 hearing*

On December 22, Razavi Zand represented Connie during the jail review portion of the hearing, proposing various courses of action by Connie to pay Cliff's attorney's fees and, thus, secure release from jail. The trial court declined to release Connie from jail at this point because Connie had not articulated a specific plan to pay the attorney's fees. The trial court set a second jail review hearing for a date in January 2015.

Razavi Zand then re-urged her motion to withdraw, explaining that her conflict with Connie was "so egregious" as to preclude continued representation: "Because under the disciplinary rule[s], it is a mandatory withdrawal. . . . I am so conflicted out, due to the egregious conduct that has occurred between my client and myself, that my personal interests have now far exceeded my ability to advocate for Ms. Harrison." However, the trial court was not able to complete this hearing, and it recessed until the following day.

## 3. *The December 23 hearing*

On December 23, the trial court resumed argument on Razavi Zand's motion to withdraw. Connie opposed Razavi Zand's withdrawal if it left her without counsel. She also insisted that Razavi Zand did not have cause to withdraw. Connie testified that Razavi Zand's real reason for withdrawal was financial. Also, Connie stated that Razavi Zand told her she was involved in a lawsuit against the trial judge's husband.[13]

---

[13] The trial judge stated that she was not married.

When questioned, Razavi Zand stated that she disagreed with Connie's implication that Razavi Zand sought to withdraw "for some other purpose than [Connie's] conduct." Razavi Zand stated unequivocally that she was not withdrawing for the reasons Connie suggested. Instead, Razavi Zand clarified that Connie's actions formed the basis for her request to withdraw. She inquired of Connie: "Would you agree with me that I have informed you *that there are certain actions that you have done*, prior to my filing, post my filing of my Motion to Withdraw, that I have informed you those were one of many reasons why I was withdrawing?" (Emphasis added.) Connie responded to this question by affirming that, while she did not want to waive her attorney-client privilege, Razavi Zand had stated reasons for withdrawing, though Connie did not "agree[] with those reasons."

Razavi Zand verified that she had some of Connie's case files at her office and that she would be able to deliver those files to whomever Connie designated, but Connie stated that she had no one who could accept these files on her behalf. Connie explained that she had not been able to retain other counsel due to her confinement.

At the close of the hearing, the trial court allowed Razavi Zand to withdraw. The court ordered Razavi Zand to deliver Connie's files on January 2, 2015, a date the trial court scheduled for Connie's next jail review hearing. The trial judge explained that she was ruling only on the motion to withdraw at this hearing, and she could address other pending matters at either the January 2 or January 9 hearings.[14] The trial setting was January 20.

---

[14] Although the trial court's docket sheet indicates that hearings were conducted on January 2 and January 9, we do not have reporter's records from those hearings.

**B.      Withdrawal of Counsel – Applicable Law**

An attorney may withdraw from representing a party only upon written motion for good cause shown.  *See* Tex. R. Civ. P. 10.  This rule does not define good cause, but courts generally view the Texas Disciplinary Rules of Professional Conduct as articulating guidelines relevant to a "good cause" determination supporting a Rule 10 motion to withdraw.  *See Harrison I*, 367 S.W.3d at 826; *see also* Tex. Disciplinary Rules Prof'l Conduct R. 1.15, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A.

Under the Disciplinary Rules of Professional Conduct, a lawyer must withdraw from representing a client if "the representation will result in a violation of . . . applicable rules of professional conduct or other law."  Tex. Disciplinary Rules Prof'l Conduct R. 1.15(a).  This rule "requires a lawyer to withdraw from employment when the lawyer knows that the employment will result in a violation of a rule of professional conduct or other law."  *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.15 cmt. 2.  Further, because attorney-client confidentiality considerations may prevent a lawyer from revealing a detailed factual explanation in support of a motion to withdraw, a "lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient."  *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.15 cmt. 3; *see also In re Marriage of Glynn*, No. 07-13-00095-CV, 2014 WL 7448675, at *2 n.2 (Tex. App.—Amarillo Dec. 31, 2014, no pet.) (mem. op.).

**C.      Permitting Counsel to Withdraw Was Not an Abuse of Discretion**

At the hearings on her motion to withdraw, Razavi Zand asserted that she was required to withdraw due to Connie's actions, which had created what Razavi Zand described as an "egregious" conflict.  Razavi Zand stated that, due to Connie's actions, Razavi Zand could not place Connie's interests above her own:

20

[T]he conflict at this point is so egregious that I cannot continue to make these arguments and -- have to stay on the case. Because under the disciplinary rule, it is a mandatory withdrawal. And by me staying on the case, your Honor, I am so conflicted out, due to the egregious conduct that has occurred between my client and myself, that my personal interests have now far exceeded my ability to advocate for Ms. Harrison.

Connie, on the other hand, opposed Razavi Zand's withdrawal, telling the court she had "not done anything to cause [Razavi Zand] to withdraw." Connie suggested that Razavi Zand sought to withdraw for financial reasons, but Razavi Zand stated that payment issues were not the basis of her motion. Connie also suggested that Razavi Zand filed her motion to withdraw because Razavi Zand was involved in a lawsuit against the trial judge's purported husband. But Razavi Zand stated that any such lawsuit was not the reason for her withdrawal.

Based on our record, Connie has not shown that the trial court abused its discretion in accepting Razavi Zand's statement of the grounds for her motion to withdraw. Razavi Zand explained that her continued representation of Connie would have caused Razavi Zand to violate the disciplinary rules by compromising her fiduciary duties to Connie. Under such circumstances, Razavi Zand was required to withdraw as Connie's counsel. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.15(a); *see also Comm'n for Lawyer Discipline v. Hanna*, 513 S.W.3d 175, 178 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (explaining that the disciplinary rules "establish minimum standards of conduct required of lawyers to avoid disciplinary action"; they are "imperatives"); *Glynn*, 2014 WL 7448675, at *2. The trial court, as the factfinder, was the sole judge of credibility and was free to accept Razavi Zand's assertions that she had cause to withdraw. *See, e.g.*, *Scruggs v. Linn*, 443 S.W.3d 373, 382 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)). Although it would have been

21

preferable to have obtained a more detailed explanation through an in camera conference or other means that would have preserved attorney-client privilege, Razavi Zand's explanation was sufficient to support good cause to withdraw. *See, e.g.*, *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (explaining the fiduciary relationship between attorney and client; describing that a breach of fiduciary duty occurs when an attorney places personal interests over the client's interest).

Accordingly, we conclude the trial court did not abuse its discretion in permitting Razavi Zand to withdraw and overrule this part of Connie's first issue. We next consider whether the trial court abused its discretion in denying a trial continuance.

**D.    Motion for Continuance – Applicable Law**

In the next portion of her first issue, Connie urges that to the extent Razavi Zand's withdrawal was appropriate, the trial court nonetheless abused its discretion by permitting the withdrawal without also granting a continuance of the January 20 trial setting.

Texas Rule of Civil Procedure 251 governs motions for continuance. This rule provides that a motion for continuance shall not be granted without "sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. Accordingly, motions for continuance generally must be in writing, state the specific facts supporting the motion, and be verified or supported by an affidavit. *In re G.S.*, No. 14-14-00477-CV, 2014 WL 4699480, at *25 (Tex. App.—Houston [14th Dist.] Sept. 23, 2014, no pet.) (mem. op.) (citing Tex. R. Civ. P. 251, 252; *In re E.L.T.*, 93 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). When a motion for continuance does not comply with the rules, e.g., when the motion is unwritten or unsupported by verified facts, appellate courts

generally presume the trial judge did not abuse its discretion in denying the motion. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *see also In re S.M.H.*, 523 S.W.3d 783, 797 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *W.W. Webber, L.L.C. v. Harris Cty. Toll Road Auth.*, 324 S.W.3d 877, 880 (Tex. App.—Houston [14th Dist.] 2010, no pet.)). Oral requests for a continuance do not preserve error. *See Phifer v. Nacogdoches Cty. Cent. Appraisal Dist.*, 45 S.W.3d 159, 173 (Tex. App.—Tyler 2000, pet. denied); *see also D.F. v. State*, 525 S.W.2d 933, 941 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (no abuse of discretion in denying continuance even though counsel withdrew only one day before trial when appellant failed to file written motion for continuance pointing out sufficient cause supported by affidavit; instead, only unsworn oral motion for continuance urged on day of trial).

When, as alleged here, the ground for a continuance is the withdrawal of counsel, the movant must show that the failure to be represented at trial was not due to her own fault or negligence. *Villegas*, 711 S.W.2d at 626; *Harrison I*, 367 S.W.3d at 827. The "absence of counsel will not be good cause for a continuance or postponement of the cause when called for trial, except it be allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record." Tex. R. Civ. P. 253.

## E.    Denying Connie's Motion for Continuance Was Not an Abuse of Discretion

It is unclear precisely which motion or motions for continuance form the basis of Connie's appellate complaints.[15] According to the reporter's record, Razavi Zand filed a written motion for continuance on Connie's behalf, which the trial court

---

[15] Connie's brief contains no record citations to a motion for continuance, either written or oral.

denied at the December 18 hearing.  Other portions of the reporter's record indicate that Connie attempted to orally request a trial continuance at least twice after the trial court permitted Razavi Zand to withdraw.  At the January 16 pretrial hearing, Connie attempted to argue a motion for continuance she asserted she had filed.  However, the trial court refused to consider her request because Connie had not set the motion for a hearing or served a copy on Cliff's counsel or the amicus attorney.  Also, during the first afternoon of trial, Connie orally asked the court for a continuance.

Our record contains no copies of any written motions for continuance, including the motion filed by Razavi Zand or the motion purportedly filed before January 16.  When counsel withdraws but no written motion for continuance is contained in the record, we presume that the trial court has not abused its discretion in denying a continuance.  *See, e.g.*, *E.L.T.*, 93 S.W.3d at 375; *D.F.*, 525 S.W.2d at 941; *see also S.M.H.*, 523 S.W.3d at 797 (no abuse of discretion shown in denying oral motion for continuance unsupported by affidavit where record did not reveal agreement by the parties or argument that continuance should have been granted by operation of law).  Additionally, to the extent Connie seeks to rely on any oral requests for continuance as a basis of her appellate complaint, oral motions for continuance do not preserve error.  *See Phifer*, 45 S.W.3d at 173.  A trial court does not abuse its discretion in denying an oral motion for continuance.  *See, e.g.*, *S.M.H.*, 523 S.W.3d at 797 (trial court did not abuse its discretion in denying oral motion for continuance that was not supported by affidavit); *Dempsey v. Dempsey*, 227 S.W.3d 771, 776 n.1 (Tex. App.—El Paso 2005, no pet.) (when request for continuance is oral and unsupported by affidavit, it will be presumed that trial court did not abuse its discretion in denying continuance).

Thus, our review of this portion of Connie's first issue is foreclosed because our record does not contain a copy of the written motion for continuance forming the basis of her complaint. *See E.L.T.*, 93 S.W.3d at 375 ("In this case, the record does not contain a written motion [for continuance] or affidavit. Because appellant did not comply with Rule 251, the trial court did not abuse its discretion in denying the motion."); *cf. Harrison I*, 367 S.W.3d at 831-32 (providing details from Connie's written motion for continuance). For example, we cannot determine whether Connie's motion was properly verified, what specific facts formed the basis of the continuance sought, and what, if any, efforts Connie undertook to engage alternate counsel.

Moreover, even presuming Connie properly moved for a continuance, Razavi Zand explained that the reason for her requested withdrawal was that Connie's conduct created an "egregious" conflict. Connie argued that Razavi Zand's reasons were financial or related to a purported lawsuit involving the trial judge's fiancé. Even if we consider these statements to the trial court as sworn evidence in support of a properly filed motion for continuance, the trial court was the factfinder and had discretion to accept Razavi Zand's statements that the basis of her withdrawal was due to Connie's fault. *See, e.g.*, *Scruggs*, 443 S.W.3d at 382. This record supports the trial court's implied finding that Connie failed to prove that her counsel's withdrawal was not due to Connie's own fault. When counsel withdraws due to the fault of the movant, a trial court generally does not abuse its discretion in denying a motion for continuance. *See Gendebien v. Gendebien*, 668 S.W.2d 905, 907-09 (Tex. App.—Houston [14th Dist.] 1984, no writ) (husband failed to show absence of counsel was not due to his own fault or negligence or that he exercised reasonable diligence to obtain new counsel; thus, trial court did not abuse its discretion in refusing to continue divorce based on absence of counsel); *cf. Barbarawi v. Ahmad*,

No. 14-07-00790-CV, 2008 WL 2261433, at *2-3 (Tex. App.—Houston [14th Dist.] May 27, 2008, no pet.) (mem. op.) (trial court did not abuse its discretion in denying motion for continuance when appellants failed to show that lack of representation was not due to their own fault or negligence,); *Van Sickle v. Stroud*, 467 S.W.2d 509, 510-11 (Tex. Civ. App.—Fort Worth 1971, no writ) (in the absence of evidence showing Van Sickle was not at fault for trial counsel's withdrawal and his diligence in finding new counsel, trial court acted within its discretion in denying trial continuance).

Connie cites this court's opinion in her prior appeal, in which we held that the trial court abused its discretion in denying a continuance when Connie's counsel withdrew through no fault of Connie's. *Harrison I*, 367 S.W.3d at 831-35. But the record and circumstances then presented differ from the current appeal. *Cf. id.* For example, the only reason for her then-counsel's withdrawal was Connie's lack of financial resources to satisfy her contractual payment obligations. *Id.* at 828. We concluded that there were "significant questions about whether Connie *substantially* failed to fulfill her obligation to pay" her counsel. *Id.* at 829. Although we did not hold that the trial court abused its discretion in permitting Connie's counsel to withdraw, we noted that "allowing withdrawal in th[at] instance approach[ed] the outer limits of discretion." *Id.* at 831. Moreover, in the earlier appeal, the record showed that Connie filed a motion for continuance in which she explained that she was not at fault for her counsel's withdrawal and detailed actions taken to engage new counsel. *Id.* at 831-32. Ultimately, we concluded that the record did not show that Connie was at fault for causing her counsel's withdrawal. *Id.* at 832-34.

In our view, the current record, including in particular events transpiring in the trial court since remand, show an altered landscape and do not lead to the same result as our earlier disposition. In exercising its discretion over whether to grant or

deny a continuance due to the withdrawal of counsel, a trial court may consider the entire procedural history of a case. *Jackson v. LongAgriBusiness, L.L.C.*, No. 14-11-01073-CV, 2013 WL 84921, at *1 (Tex. App.—Houston [14th Dist.] Jan. 8, 2013, no pet.) (mem. op.). Here, the trial court possessed abundant knowledge of this matter's prolonged history bearing upon whether Connie was entitled to a continuance in December 2014. The record reflects that Connie retained upwards of a dozen different attorneys over the course of this case, hiring at least half of them following our remand. Many of these attorneys withdrew—often with Connie's blessing—before trial settings, resulting in a pattern of trial postponements. Connie consented to the withdrawal of her previous counsel in September 2014, when Connie was aware of the January 2015 trial setting. Connie did not retain Razavi Zand until early December 2014—a little over a month before trial. Less than two weeks into Razavi Zand's representation of Connie, Razavi Zand moved to withdraw based on Connie's actions. On this record, Connie's serial employment of attorneys, continuing unabated following remand, reasonably could be viewed as undertaken for dilatory purposes, which the court could balance against her requested continuance. *Cf. Harrison I*, 367 S.W.3d at 834-35 ("Serial hiring and firing of attorneys for dilatory purposes would be a legitimate concern to be balanced against a requested continuance in appropriate circumstances.").

In support of her argument, Connie also cites cases in which courts reversed the denial of a continuance when counsel withdrew. *Villegas*, 711 S.W.2d at 626; *Harrison I*, 367 S.W.3d at 831-34; *McAleer v. McAleer*, 394 S.W.3d 613, 617-20 (Tex. App.—Houston [1st Dist.] 2012, no pet.). We find these cases distinguishable because each involved withdrawal of counsel through no fault of the client. *Villegas*, 711 S.W.2d at 626 (attorney withdrew two days before trial, refused to return the client's files, and trial court denied continuance; supreme court held the trial court

abused discretion because evidence showed Villegas was not negligent or at fault in causing his attorney's withdrawal.); *Harrison I*, 367 S.W.3d at 831-34 ("If fault is to be assigned for the failure to seek interim fees under these circumstances, we do not believe that such fault properly can be assigned to the client."); *McAleer*, 394 S.W.3d at 617-20 (motion for continuance should have been granted when client, through no fault of his own, found himself in "extremely difficult situation" with counsel who did not participate in discovery and became uncommunicative, and client was forced to hire another attorney shortly before trial). As we have determined, however, Connie has not demonstrated that Razavi Zand's withdrawal was through no fault of Connie.

Under these circumstances and on the present record, Connie has not established that the trial court abused its discretion in denying a trial continuance based on the absence of counsel. Accordingly, we overrule Connie's first issue.

## Custody Determination

In issue two, Connie challenges the trial court's custody rulings appointing Cliff sole managing conservator of J.H. and V.H., naming Connie possessory conservator, and limiting Connie's visitation to four hours twice monthly, supervised by a third party. Dividing her arguments into numerous sub-points, Connie claims the trial court abused its discretion by: (1) excluding Connie's trial exhibits concerning custody and the children's best interest; (2) placing time limits on the presentation of evidence; (3) ignoring "compelling and abundant evidence that Cliff had committed domestic violence against Connie in front of the children"; (4) ordering that Connie's visitation with J.H. and V.H. be supervised when no evidence supports such an order; (5) allegedly conditioning Connie's visitation with J.H. and V.H. on Cliff's schedule without any enforceable visitation rights; (6) withdrawing

28

trial of the case from a jury; and (7) refusing to grant Connie the custody rights to which the parties agreed in the MSA.

In addressing each of Connie's arguments, we remain mindful that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code § 153.002; *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). A trial court has broad discretion to decide the best interest of children in matters involving custody, visitation, and possession. *E.g.*, *Allen v. Allen*, 475 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). We review a trial court's custody decision for an abuse of discretion. *R.T.K.*, 324 S.W.3d at 899. As discussed above, a trial court abuses its discretion when its decision is unreasonable, arbitrary, or without reference to guiding rules or principles. *See Butnaru*, 84 S.W.3d at 211; *Baker*, 469 S.W.3d at 273. We make our determination based on a review of the entire record. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). In evaluating a trial court's exercise of discretion, we generally defer to the court's resolution of underlying facts and credibility determinations that may have affected its decision, and we do not substitute our judgment in its place. *See Allen*, 475 S.W.3d at 458. The trial court is best able to observe and assess the witnesses' demeanor and credibility and to sense what may not be apparent merely from reading the record on appeal. *Id.*

Under the abuse of discretion standard, challenges to the legal or factual sufficiency of the evidence are not independent grounds of error, but are relevant considerations in assessing whether the trial court abused its discretion. *R.T.K.*, 324 S.W.3d at 900-01. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *Id.* With

these principles in mind, we turn to Connie's arguments in support of her second issue.

## A. Exclusion of Evidence and Time Restrictions

In her first attack on the trial court's custody determination, Connie asserts that the trial court abused its discretion by (1) excluding her trial exhibits, which she contends contained evidence of Cliff's alleged history of domestic violence, and (2) placing time restrictions on her presentation of evidence. We address each argument in turn.

1. *Connie has not established that the trial court abused its discretion by excluding her exhibits.*

Evidentiary decisions are committed to the trial court's sound discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). To show that the trial court abused its discretion in excluding evidence, a complaining party must first establish that evidence affecting the party's substantial rights was excluded, i.e., that the party offered the evidence and obtained an adverse ruling from the trial court, thus preserving error. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a); *see also In re L.D.W.*, 14-11-00438-CV, 2013 WL 2247383, at *3 (Tex. App.—Houston [14th Dist.] May 21, 2013, no pet.) (mem. op.). If, as here, the evidentiary ruling excludes evidence, preservation of error also entails presenting an offer of proof to the trial court. Tex. R. Evid. 103(a).

On appeal, the party must demonstrate that the trial court erred in excluding the evidence and that the error probably caused the rendition of an improper judgment. *See L.D.W.*, 2013 WL 2247383, at *2. In determining harm, the court ordinarily will not reverse a judgment when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *L.D.W.*, 2013 WL 2247383, at *3.

A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *See Able*, 35 S.W.3d at 617.

a.    Relevant factual background

A brief discussion of events precipitating the trial court's ruling is necessary. The trial court scheduled a pretrial conference for January 9, the date by which the parties were to have exchanged their respective trial exhibits. *See* Tex. R. Civ. P. 166(l). However, Connie did not have her exhibits prepared to exchange at the pretrial conference, so the trial court recessed proceedings and ordered Connie to exchange exhibits with Cliff's counsel by 5:00 p.m. that day. Connie assured the court that she could exchange her exhibits by that time.[16] But Connie failed to appear or contact Cliff's counsel that day. Also, Connie did not make arrangements to exchange exhibits with Cliff's counsel or the amicus attorney at any time between January 9 and the next pretrial conference scheduled for January 16.

When January 16 arrived, the trial court learned that Connie still had not provided her exhibits to opposing counsel and the amicus attorney, despite Connie's representation that she would do so by the close of business on January 9. The trial court again provided Connie with additional time to exchange her exhibits, ordering her to provide copies to all counsel by 1:45 p.m. on January 16. The trial court warned Connie that if she failed to provide her exhibits to opposing counsel and the amicus attorney by that time, the court would exclude them: "So any documents that you intend to tender to [opposing counsel] will occur inside this courtroom at 1:45. If they're not tendered to [opposing counsel] at 1:45, then, they're excluded."

_____

[16] Connie did not assert that her incarceration from December 18 to January 5 impaired her ability to comply with the trial court's deadline for exchanging exhibits.

Connie failed to meet this third deadline. When Connie arrived in the courtroom (fifteen minutes late) on the afternoon of January 16, she still did not have her exhibits ready to provide to opposing counsel. The judge stated, "[T]here will not be any exhibits that will be offered at the time of the jury trial by [Connie] --, well, not offered; there will not be any that will be admitted into evidence."

### b. Preservation of error

We first address whether Connie preserved error by offering her exhibits into evidence and securing an adverse ruling. Tex. R. App. P. 33.1(a). Connie has not identified by citation—nor have we found—a place in the record when she offered the exhibits into evidence during the evidentiary portion of trial.[17] *See L.D.W.*, 2013 WL 2247383, at *2 (concluding that mother failed to preserve error on exclusion of psychological evaluation report because, even though report was contained in appellate record, mother failed to offer report into evidence and failed to make offer of proof or bill of exception); *Est. of Veale v. Teledyne Indus., Inc.*, 899 S.W.2d 239, 242 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (to preserve error on exclusion of evidence, party must attempt during evidentiary portion of trial to introduce evidence).

However, the trial court clearly ruled at a January 16 pretrial hearing that none of Connie's exhibits would be admitted into evidence at trial and announced that ruling on the record. The trial court has the authority to make a pretrial ruling on the admissibility of evidence. *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d

---

[17] Although Connie may have attempted to offer her exhibits into evidence at some point during trial, we have no duty to review this voluminous record without guidance from Connie to determine whether her assertion of error is valid. *See, e.g.*, *Lares v. Flores*, No. 04-13-00792-CV, 2015 WL 672560, at *2 (Tex. App.—San Antonio Feb. 11, 2015, no pet.) (mem. op.); *Casteel-Diebolt v. Diebolt*, 912 S.W.2d 302, 305 (Tex. App.—Houston [14th Dist.] 1995, no writ). We have, nonetheless, undertaken a thorough review of the reporter's record from the trial and find no occasion when Connie sought to introduce her exhibits into evidence during trial proceedings.

32

551, 557 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998). The trial court's pretrial ruling excluding Connie's exhibits is sufficient to preserve Connie's appellate complaint. *See Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 91-92 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 203-04 (Tex. App.—Texarkana 2000, pet. denied) (pretrial ruling on evidence admissibility sufficient to preserve error).

We also conclude that the excluded exhibits affect Connie's substantial rights because they pertain to her rights of possession and custody of her children. *See In re Shifflet*, 462 S.W.3d 528, 541 (Tex. App.—Houston [1st Dist.] 2015, no pet., orig. proceeding). Connie also informed the trial court of the substance of the excluded exhibits by an offer of proof. Tex. R. Evid. 103(a)(2); *see also Katy Int'l, Inc. v. Jinchun Jiang*, 451 S.W.3d 74, 96 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (to preserve error in exclusion of evidence, complaining party must show by bill of exception or offer of proof substance of evidence excluded).

Thus, we hold that Connie preserved error on this issue.

c.      Did the trial court err in excluding the exhibits?

Connie asserts that the trial court's exclusionary ruling was error because this is "a custody case where the 'best interests' of the child is at stake" and the court's ruling was an extreme penalty akin to striking of pleadings—i.e., a death penalty sanction.

To "assist in the disposition of the case," Rule 166 permits trial courts to hold pretrial conferences and enter orders requiring the parties to, before trial, exchange all exhibits a party may use at trial. Tex. R. Civ. P. 166(l); *see also Jordan v. Jordan*, No. 14-12-00114-CV, 2013 WL 2489577, at *2 (Tex. App.—Houston [14th Dist.] June 11, 2013, no pet) (mem. op.); *Taylor v. Taylor*, 254 S.W.3d 527, 532 (Tex.

App.—Houston [1st Dist.] 2008, no pet.). Although this rule does not expressly authorize the imposition of sanctions for violations of pretrial orders, the Supreme Court of Texas has held that the power to sanction a party's violation is implicit in the rule. *Koslow's v. Mackie*, 796 S.W. 2d 700, 703-04 (Tex. 1990). Imposing such sanctions "is left to the sound discretion of the trial court," which we will set aside only on a showing of a clear abuse of discretion. *Id.* at 704. Sanctions imposed under Rule 166 must be "just and appropriate." *Taylor*, 254 S.W.3d at 532.

Trial courts have great discretion "to control the disposition of cases with economy of time and effort for itself, for counsel, and for litigants." *King Fisher Marine Serv.*, 443 S.W.3d at 843 (internal quotations omitted); *Dow Chem. Co.*, 46 S.W.3d at 240). This discretion empowers a trial court to fulfill "a duty to schedule its cases in such a manner as to expeditiously dispose of them." *King Fisher Marine Serv.*, 443 S.W.3d at 843.

Connie essentially argues that any exclusion of evidence pertaining to domestic violence is an abuse of discretion in a custody dispute when the best interest of children is at stake. Although we agree with Connie that "the best interest of a child can only be attained when a court's decision is as well-informed as the circumstances allow,"[18] the present record does not show that the trial court acted outside the zone of its reasonable discretion. Although the trial court excluded Connie's trial exhibits, the court did not strike Connie's pleadings or defenses, did not strike any of Connie's witnesses, and permitted Connie to develop evidence on the domestic violence issue through witness testimony and cross-examination.[19] Further, the court excluded Connie's exhibits only after giving Connie multiple opportunities to exchange exhibits and expressly warning Connie that her exhibits

---

[18] *See In re P.M.B.*, 2 S.W.3d 618, 624-25 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

[19] We discuss much of this testimony in subsection B, *infra*.

would be excluded if she did not timely provide them to counsel, and after Connie represented to the court that she would comply. The court's exclusionary ruling was a measured consequence linked directly to Connie's actions in failing to comply with the pretrial order to tender her exhibits to all counsel. Connie does not suggest an alternative, lesser sanction that would have been more appropriate (and effective) than striking the exhibits she proposed to rely upon but repeatedly failed to timely provide to all counsel.

The exclusionary ruling limited only to Connie's proposed exhibits was within the bounds of the court's discretion and Connie has not shown otherwise. *See Young*, 2016 WL 7339117, at *6-7; *Eason v. Eason*, 860 S.W.2d 187, 189-90 (Tex. App.—Houston [14th Dist.] 1993, no pet.) (concluding that trial court's exclusion of mother's witnesses as a discovery sanction was not an abuse of discretion); *cf. also Koslow's*, 796 S.W.2d at 704 (holding that trial court did not abuse its discretion by striking pleadings and rendering default judgment as sanction for violation of pretrial order and collecting similar cases); *Jordan*, 2013 WL 2489577, at *3 (noting, in determining that trial court abused its discretion in excluding appellant's exhibit, that appellant was not warned pretrial that "failure to tender his exhibits would preclude him from presenting any documentary evidence at trial"). Connie's contrary position would effectively neuter a trial court's broad power to impose consequences on recalcitrant litigants and enforce its pretrial orders in custody matters by prohibiting a trial court from imposing any exclusionary sanction at all if the evidence in question relates to alleged domestic violence. Apart from Connie's exhibits, the trial court permitted Connie to present evidence of domestic violence, thus satisfying the preference for a decision "as well-informed as the circumstances allow." *P.M.B.*, 2 S.W.3d at 624-25.

In support of her position, Connie cites our decisions in *In re N.R.C.*, 94 S.W.3d 799, 810 (Tex. App.—Houston [14th Dist.] 2002, pet. denied), and *In re P.M.B.*, 2 S.W.3d at 624. In *N.R.C.*, the trial court, as a sanction for the wife's failure to pay ad litem fees in a termination case, excluded all of the wife's witnesses other than herself. Applying a death penalty sanction analysis under *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991), we held that the order striking all of the wife's trial witnesses did not relate directly to the offense and was excessive. *N.R.C.*, 94 S.W.3d at 811-12.

In *P.M.B.*, the trial court excluded all of the husband's witnesses and documents that were not identified or produced in response to the wife's discovery requests. *See P.M.B.*, 2 S.W.3d at 621. Conducting a discovery sanction analysis under Texas Rule of Civil Procedure 215, we stated that the exclusion of "essential evidence," like the striking of pleadings, can equate to a death penalty sanction and thus should not be used unless lesser sanctions would be impracticable or have been attempted and proven unsuccessful. *Id.* at 625. We held the trial court abused its discretion in excluding the husband's evidence and remanded for further proceedings. *Id.*

In a post-submission brief, Connie argues that our court in *Jordan* overruled the exclusion of evidence in a divorce case based on scheduled pre-trial exchanges as an improper death penalty sanction. *See Jordan*, 2013 WL 2489577, at *4. In *Jordan*, however, the trial court severely limited the party's ability to present any evidence at trial other than his own testimony, which deprived the party from presenting the merits of his case. *Id.* at *2. Connie was not deprived of the opportunity to present the merits of her case.

Connie's post-submission brief also cites *Taylor*. In that case, the trial court prevented a father from presenting any evidence at trial, through non-party witnesses

or exhibits, because the father had not tendered his exhibits or witness list at the pretrial conference. *Taylor*, 254 S.W.3d at 530. The First Court of Appeals conducted a death penalty sanction analysis and held that the sanction failed the first *TransAmerican* prong because the opposing party suffered no prejudice, and held the sanction failed the second prong because it was excessive for a custody dispute. *Id.* at 533-34.

A common thread in all these cases is the application of a death penalty sanction analysis. Unlike Connie, however, we do not liken the trial court's challenged ruling in the present case to a death penalty type sanction. A "death penalty" sanction is one that that adjudicates a claim and precludes the presentation of the merits of the case. *See Adkins Servs., Inc. v. Tisdale Co.*, 56 S.W.3d 842, 845 (Tex. App.—Texarkana 2001, no pet.); *P.M.B.*, 2 S.W.3d at 624. Contrary to Connie's characterization of the record, the trial court did not prevent Connie from presenting "any evidence at all" of Cliff's alleged domestic violence. The court excluded Connie's trial exhibits, but Connie was free to testify, and did testify, as to domestic violence matters during trial, as we summarize in detail below. Unlike *P.M.B.* and *N.R.C.*, the trial court did not strike any of Connie's witnesses and she was able to call whomever she wanted to present testimony on domestic violence. She also spent a substantial portion of her allotted time cross-examining Cliff on domestic violence issues. The court did not strike any portion of Connie's pleadings or defenses. The trial court's exclusion of Connie's trial exhibits neither adjudicated her domestic violence argument nor precluded her presentation of testimony on the subject.

For these reasons, we hold Connie has not demonstrated that the trial court abused its discretion by excluding her exhibits. *See, e.g.*, *L.D.W.*, 2013 WL 2247383, at *2; *cf. also GQ Enters. Corp. v. Rajani*, No. 05-12-01353-CV, 2014 WL

2152000, at *2 (Tex. App.—Dallas May 22, 2014, no pet.) (mem. op.); *Hartbrich v. Vance*, No. 03-01-00635-CV, 2002 WL 31476889, at *3-4 (Tex. App.—Austin Nov. 7, 2002) (not designated for publication) (concluding, in a child custody case, that order striking mother's pleadings was not an excessive sanction due in part to mother's dilatory tactics in responding to discovery; "sanction was directed at the offender and was crafted to address the prejudice the discovery abuse caused the children").

            d.      Assuming error, Connie has not demonstrated harm.

In determining whether the excluded evidence probably resulted in an improper judgment, a court must review the entire record. *See Able*, 35 S.W.3d at 617; *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). Again, we typically will not reverse a judgment for erroneous evidentiary rulings unless the excluded evidence is controlling on a material issue dispositive to the case and not cumulative. *See Able*, 35 S.W.3d at 617.

Even if the trial court erred by excluding Connie's exhibits for her failure to exchange them pretrial, she has not shown that the ruling led to the rendition of an improper judgment. During Connie's offer of proof, Cliff raised numerous additional objections to the admissibility of Connie's exhibits. The trial court considered those objections—effectively reconsidering its pretrial ruling to exclude them—and sustained the vast majority of Cliff's legal objections. We focus only on those exhibits Connie specifically identifies in her briefing: 4, 7, 8, 10.1-10.3, 11.2, 12, 14.1, 15-17, 135, 166-169, 183, 185, 189, 191-192, 195-200, and 215. These exhibits include (a) handwritten letters purportedly from Cliff, (b) screen shots of various text messages purportedly from Cliff that contain derogatory language, (c) undated photos depicting bruises or lacerations on what we are led to believe is

Connie's person, (d) undated photos showing some type of damage to property, (e) hospital records unaccompanied by a business records affidavit, and (f) unsworn witness statements describing a July 2014 altercation between Connie and Cliff, described *infra*. During the hearing on Connie's offer of proof, Cliff objected on hearsay grounds to exhibits 7, 135, 183, 185, 189, 191, 192, and 195-200. He objected to exhibits 10.1-10.3, 11.2, 12, 14.1, 135, 166-169, 183, 185, 189, 191-192, and 195-200 because Connie had not produced them during discovery. He objected on improper predicate grounds as to exhibits 183, 185, 189, 191-192, and 195-200. Finally, Cliff objected to exhibit 8 on the grounds that Connie had not offered it during trial.[20] The court sustained Cliff's alternative objections to the exhibits Connie tendered to the court during her offer of proof, with the exception of exhibits 4B and 215, which the court had admitted as part of Cliff's trial exhibits. The trial court also reserved her rendition of judgment until after Connie's offer of proof.

Connie has not raised as an issue or argued that the trial court erred in sustaining Cliff's hearsay and other legal objections to her exhibits.[21] Thus we have no cause to review the trial court's decision to exclude Connie's exhibits on these alternative grounds. Additionally, if the exhibits were properly excluded on hearsay or other legal grounds—which Connie does not challenge—any error in the trial court's pretrial ruling excluding the exhibits for failure to timely exchange them is harmless.

Moreover, Connie has not shown that the particular excluded exhibits she identifies in her briefing are controlling on a material issue dispositive to the case and not cumulative. The record does not support Connie's argument that the specific

---

[20] Cliff sought and obtained a running objection to all of Connie's exhibits on this basis.

[21] "If a party does not challenge all possible grounds for a trial court's ruling that sustains an objection to evidence, then the party waives any error for appellate review." *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 607 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

exhibits she cites would have controlled the domestic violence issue in light of the totality of the evidence the court heard on the subject, including other evidence Connie presented. Indeed, Cliff acknowledged certain facts on cross-examination that duplicated at least some of Connie's exhibits. For example, Cliff acknowledged that he had used derogatory language in his interactions with Connie, which is what many of Connie's exhibits—the screen shots of text messages—served to show. And, contrary to Connie's contention in her brief that she was "precluded" from offering evidence of Cliff's purported domestic violence, Connie testified to numerous instances of domestic violence during her relationship with Cliff; she also thoroughly cross-examined Cliff regarding these instances.

For the foregoing reasons, we hold that Connie has not established that the trial court reversibly erred by excluding her exhibits and overrule this portion of her second issue.

2. *Connie did not preserve error regarding her complaint about time limits on the presentation of evidence.*

"A trial court has the authority to control the presentation of evidence so as to avoid needless consumption of time." *In re M.A.S.*, 233 S.W.3d 915, 924 (Tex. App.—Dallas 2007, pet. denied); *see also* Tex. R. Evid. 611(a). Here, the trial court imposed equal time limits on all parties in presenting their respective evidence, based on their pretrial estimates of how much time they would need. Connie has not identified where she objected to the trial court's imposition of time limits. *See* Tex. R. Evid. 33.1(a) (to present complaint for appellate review, record must show complaint was timely made to trial court). She therefore has preserved no error regarding the trial court's enforcement of the time limits to which Connie did not object.

40

Thus, this portion of her second issue provides no basis for disturbing the trial court's conservatorship determination. We overrule this portion of Connie's second issue.

## B. Evidence of Domestic Violence

In the second portion of her attack on the trial court's custody determination, Connie asserts that the trial court abused its discretion in designating Cliff sole managing conservator of J.H. and V.H. because Cliff has a "history of domestic violence." Although a trial court has "wide latitude" in making conservatorship determinations,[22] Connie contends that discretion is limited by Texas Family Code section 153.004, which applies when there is a history or pattern of domestic violence in the family. Specifically, section 153.004 provides, in pertinent part,

> (a) In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force . . . by a party directed against the party's spouse . . . committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

> (b) The court may not appoint joint managing conservators if *credible* evidence is presented of a history or pattern of . . . physical . . . abuse by one parent directed against the other parent. . . . *It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of . . . physical . . . abuse by that parent directed against the other parent, a spouse, or a child.*

Tex. Fam. Code § 153.004 (emphasis added). When, as here, the trial court is the fact finder, it is the sole judge of the weight and credibility of the evidence; if it does not find *credible* evidence of a history of domestic violence, it is not bound by

---

[22] *See, e.g.*, *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

section 153.004. *Cf. Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex. App.—Austin 2003, no pet.) ("Because the district court obviously did not find the testimony to be credible evidence of a history of sexual abuse, it was not bound by section 153.004(b).").

Connie testified regarding several incidents when she claimed Cliff subjected her to physical violence during their marriage. But Cliff disputed her testimony and denied Connie's allegations. Connie also contends uncontroverted evidence of Cliff's domestic abuse exists in the form of a 2006 assault charge to which Cliff pleaded "no contest" to pushing Connie, and protective orders relating to the 2006 incident as well as a separate 2014 incident. Although a single incident of physical violence could constitute a history of physical abuse, the fact finder could also consider Cliff's explanation of what occurred and the amount of time that passed since the event in weighing whether a history of abuse was shown. *See Alexander v. Rogers*, 247 S.W.3d 757, 762-64 (Tex. App.—Dallas 2008, no pet.).

Contrary to Connie's characterization, the evidence conflicted substantially regarding Cliff's alleged history of family violence against Connie. Cliff described the 2006 incident resulting in his indictment for misdemeanor assault of a family member. According to Cliff, Connie attempted to engage him in a verbal dispute, but he walked away and went to bed. Connie pursued him, demanding they talk. When he refused, Connie told Cliff they were divorcing and demanded Cliff move out immediately. Cliff ignored Connie, and she started packing his things in a box. Connie began screaming, which woke up V.H. Cliff attempted to take the box from Connie and Connie shoved Cliff. Cliff shoved Connie back and she fell and hit her head. Connie began screaming, ran out of the room, and called the police. Ultimately, Cliff pleaded "no contest" to a misdemeanor assault charge and served

42

nine months deferred adjudication community supervision. The state dismissed the charges after Cliff successfully completed his community supervision.

Connie's description of this incident differed markedly from Cliff's. According to Connie, she asked Cliff about a female she heard he had been seen with, and Cliff became very angry. Cliff then threw her against the wall, choked her, and banged her head against a closet door. When V.H. began crying, Cliff dragged Connie by the hair and told her to "get your baby."

Connie also described several other purported violent assaults by Cliff during their marriage, during which she claimed Cliff screamed at her and hit her head against various objects. Connie did not report any of these other incidents to the police.

Cliff briefly described another incident that occurred in 2010, when Connie threw a basket of food at him in a restaurant. A restaurant server who witnessed this incident testified via deposition. The server saw Connie yell at Cliff; then, she threw a basket of fries, hitting Cliff in the back. Connie continued yelling at Cliff as Cliff walked away to the bathroom. According to the server, Connie screamed to the manager, "He hit me. He hit me. I'm calling the cops. He hit me." The server confirmed, however, that Cliff never touched Connie, and when officers arrived, the server told them what had happened. According to the server, Cliff never raised his voice to Connie and "was pretty submissive." Connie refuted the server's testimony, claiming that she never threw anything at Cliff. Instead, according to Connie, Cliff came into the restaurant, cursed at her, and shoved her into some type of standing object. No charges resulted from this incident.

Another altercation between Cliff and Connie occurred in July 2014. Again, the parties' respective accounts differed vastly. According to Cliff, he went to retrieve J.H. and V.H. from Connie for a scheduled summer visitation. The children

43

were not at Connie's home, but J.H. arrived at Cliff's home that evening. V.H. did not arrive. Cliff dropped J.H. off at Boy Scout camp the next day, and then he again attempted to retrieve V.H. from Connie. Connie initially was not home, but when she arrived, Cliff asked where V.H. was; Connie did not reply, and Cliff called the police. Connie proceeded into her home and locked the door. About 45 minutes later, the police arrived. An officer announced himself and knocked on Connie's door, but no one answered. Both the officer and Cliff eventually left.

According to Cliff, later that day, he returned to Connie's home, this time accompanied by his then-girlfriend, Heather Fitzsimmons. He knocked on Connie's door, but no one answered. Cliff and Fitzsimmons left; they returned again later that evening. When they arrived, Connie's car was in the driveway, with Connie inside the car. Cliff parked behind Connie's car. Cliff described a brief physical altercation between himself and Connie, in which he stated that she pushed him and he "moved" her off him. According to Cliff, Connie then twisted and fell, and began screaming, "Assault, assault, assault." Cliff stated he filmed part of this altercation on his cell phone, but Connie slapped his phone out of his hand, took it, and refused to return it. The cell phone video was admitted into evidence and played. Police were called; when they arrived at the scene, Cliff claimed that Connie had stolen his phone and Connie claimed that Cliff had assaulted her. According to Cliff's "find my phone" application, his cell phone was inside Connie's house.

Connie, on the other hand, stated that Cliff blocked her car in the driveway, and Fitzsimmons came up to the car and grabbed her hands. Connie emphatically and repeatedly claimed that Cliff "body slammed" her to the ground, causing significant bruising to her head and body, and that V.H. and two others witnessed this incident. Police were called to the scene, but no one was immediately arrested. Connie was transported to the hospital.

44

One of the responding officers testified as follows:

> [Cliff] said that he had shown up to pick up his daughter, and that there was a disagreement on the custody and a physical scuffle had happened between both parties; but it was really more of a, his girlfriend came -- it is not a very -- not a very long scuffle, but that his girlfriend had, kind of -- was trying to break everybody up.

The officer acknowledged that he did not see the "scuffle," and that everyone was separated when he arrived. According to this officer, Cliff seemed truthful. The officer did see a small bump on Connie's head, but she was fully clothed and he could not see any other bruises or scratches. Connie told him that she had fallen to the pavement during the scuffle. Cliff reported to the officer that his cell phone was missing, so officers proceeded to the hospital to follow up with Connie; she refused to permit the officers to look for Cliff's phone at her home. The officer stated that Cliff's cell phone was "pinging" at Connie's address, and it was not in Cliff's truck or on Cliff's person. This officer described Cliff as cooperative and Connie as uncooperative. The Harris County District Attorney's Office declined charges that night, but Connie followed up and assault charges were later brought against Cliff for this incident. However, a Harris County grand jury "no-billed" Cliff, so no further legal action was taken against Cliff.

Thus, of the three specific instances detailed in our record, the parties provided materially different accounts of events.[23] The trial court is the sole judge of the weight and credibility of the evidence. *See, e.g.*, *Coleman*, 109 S.W.3d at 111. Because the trial judge could have reasonably found no credible evidence of a history or pattern of domestic abuse by Cliff, the present record does not give rise to a rebuttable presumption that the appointment of Cliff as the sole managing

---

[23] This alone distinguishes the cases on which Connie relies, which involved undisputed evidence of family violence. *See, e.g.*, *Baker*, 469 S.W.3d 269; *In re Marriage of Stein*, 153 S.W.3d 485, 489 (Tex. App.—Amarillo 2004, no pet.).

conservator was not in the children's best interest under section 153.004(b). *See Hinojosa v. Hinojosa*, No. 14-11-00989-CV, 2013 WL 1437718, at *3-5 (Tex. App.—Houston [14th Dist.] Apr. 9, 2013, no pet.) (mem. op); *In re C.Y.C.*, No. 14-11-00341-CV, 2012 WL 3223674, at *4-6 (Tex. App.—Houston [14th Dist.] Aug. 9, 2012, pet. denied) (mem. op.); *Esparza v. Esparza*, No. 13-10-00677-CV, 2012 WL 2476228, at *2-5 (Tex. App.—Corpus Christi June 28, 2012, no pet.) (mem. op.); *Alexander*, 247 S.W.3d at 763; *Garner v. Garner*, 200 S.W.3d 303, 310 (Tex. App.—Dallas 2006, no pet.), *disapproved of on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011); *Coleman*, 109 S.W.3d at 111; *Lowth v. Lowth*, No. 14-03-00061-CV, 2003 WL 22996939, at *5-6 (Tex. App.—Houston [14th Dist.] Dec. 23, 2003, pet. denied) (mem. op.); *Burns v. Burns*, 116 S.W.3d 916, 921 (Tex. App.—Dallas 2003, no pet.).

We conclude that Connie has not shown that the trial court abused its discretion in designating Cliff sole managing conservator of J.H. and V.H. notwithstanding Connie's assertion that Cliff had a history or pattern of domestic violence. As the trial court could have reasonably credited Cliff's version of events, the court's decision was not an abuse of discretion, and we overrule this portion of Connie's second issue.

## C.    Supervised Visitation

The trial court found that it would not be in the children's best interest to appoint Cliff and Connie as joint managing conservators. The court appointed Cliff as sole managing conservator and Connie as possessory conservator. The court further found that a standard possession order ("SPO") was inappropriate or unworkable. Accordingly, the court limited Connie's visitation with the children to four hours of supervised visitation on the Saturdays following the second and fourth Friday of each month. The court found that its orders concerning possession and

46

access for Connie were not "more restrictive than necessary to provide for the safety and welfare of the children."  Connie contends that "the imposition of supervised visitation with such a restrictive period of access was an abuse of discretion."

The Texas Family Code provides guidelines for determining the periods of possession for a possessory conservator.  Tex. Fam. Code § 153.192(b).  The code creates a rebuttable presumption that the SPO provides a possessory conservator reasonable minimum possession of the child and that the SPO is in the best interest of the child.  *Id.* § 153.252.  A trial court may deviate from the SPO,[24] but must consider "(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named possessory conservator; and (3) any other relevant factor."  Tex. Fam. Code § 153.256.

"[I]n all cases in which possession of a child by a parent is contested and the possession of the child varies from the [SPO], on written request made or filed with the court not later than 10 days after the date of the hearing or on oral request in open court during the hearing, the court shall state in the order the specific reasons for the variance from the standard order."  *Id.* § 153.258 (West 2014).[25]  Here, the court rendered its judgment on February 13, 2015, and signed the final judgment on March 26.  Connie filed a written request for findings of fact on April 14, more than ten days after these hearings.  As Connie did not timely request findings and does not complain on appeal about the trial court's failure to state its reasons for variance, we apply the same standard of review as when a party fails to make a request for findings

---

[24] *See Hinojosa*, 2013 WL 1437718, at *6 ("However, a trial court is permitted to place conditions on a parent's access, such as supervised visitation, if necessary for the child's best interest. . . .").

[25] The Legislature modified this statute effective September 2017, so we cite to the previous bound version.

of fact under the Rules of Civil Procedure. *See In re P.A.C.*, 498 S.W.3d 210, 217 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We therefore imply all findings necessary to support the trial court's judgment. *Id.* We review the record in the light most favorable to the trial court's judgment to determine whether some evidence supports it, and we will uphold the judgment on any legal theory that finds support in the evidence. *See id.*

An order restricting a parent's right to possession of or access to a child may not impose restrictions beyond those required to protect the child's best interest. *See* Tex. Fam. Code § 153.193. A trial court does not abuse its discretion in restricting a parent's possession and access when the record contains evidence to support a finding that such restrictions are in the children's best interest. *P.A.C.*, 498 S.W.3d at 219.

Here, the evidence showed Connie's unwillingness to conduct herself in a manner that furthered the children's best interest. For example, Connie's detrimental and disruptive behavior resulted in Second Baptist School's refusal to enroll J.H. and V.H. for the 2015-16 academic year. Cliff testified about numerous occasions when he arrived at Second Baptist School to pick up the children only to be told Connie had already taken them. On those occasions, Connie routinely refused to respond to Cliff's texts, emails, or phone calls. A Second Baptist School principal, Tamara Gallagher, confirmed Connie's disruptive behavior and agreed that, but for Connie's repeated school policy violations, the children would have been permitted to re-enroll at Second Baptist School.

Another parent at Second Baptist School, whose son was friends with J.H., described her experiences with Connie. She related several occasions when Connie dropped off J.H. and V.H. for a play date, but did not return as promised. This parent also testified that Connie had a reputation among the Second Baptist School

48

community for untruthfulness. According to this parent, Connie's repeated disrespectful actions lead the parent's family to sever their relationship with Connie. As the parent stated, "[Connie's] manipulative. She's not a truthful person. We cannot trust her; and quite frankly, we're a little afraid of what kind of person she is."

Connie also displayed an inability or unwillingness to comply with prior court orders based on the children's best interest. For example, the court granted Cliff the right to determine enrollment for J.H. and V.H. following Second Baptist School, yet Connie unilaterally enrolled them in schools without Cliff's knowledge. And, after the trial court removed Connie as a joint managing conservator, Connie repeatedly attempted to access J.H. and V.H. in violation of court orders restricting her access.[26] Further, Cliff testified regarding the deterioration in Connie's behavior and her inability to make sound judgments regarding the children. He testified about Connie's manipulative behavior, stating that she withheld J.H. and V.H. from him in attempts "to extort letter agreements" from Cliff regarding custody. He also described extended periods of time when Connie kept J.H. and V.H. from him during his court-ordered periods of possession. In an attempt to alienate Cliff from his children, Connie wrote letters to J.H. and V.H. in which she blamed Cliff for "keeping them apart."

---

[26] In the context of her evidentiary challenge to the supervised visit restriction, Connie complains about the September 3, 2014 hearing in which Cliff was named temporary sole managing conservator. However, because the trial court entered a final judgment, temporary orders are moot and not subject to appellate review. *See In re M.L.R.*, No. 05-15-00647-CV, 2016 WL 5791530, at *2 (Tex. App.—Dallas Oct. 4, 2016, no pet.) (mem. op.) ("It is well-settled a temporary order is superseded by entry of a final order, rendering moot any complaint about the temporary order."); *In re D.W.*, Nos. 01-13-00880-CV, 01-13-00883-CV, 01-13-00884-CV, 2014 WL 1494290, at *3 (Tex. App.—Houston [1st Dist.] Apr. 11, 2014, no pet.) (mem. op.).

49

Testimony from Connie's sister also supported a finding that supervising Connie's visitation was not more restrictive than necessary to protect the children's best interest. Describing Cliff as a good father, Connie's sister testified that she had never seen Cliff do or say anything that concerned her about Cliff's parenting abilities. Yet, tellingly, she declined to express an opinion when asked similar questions about Connie's parenting abilities. Connie's sister stated that she would not leave her own children with Connie.

Testimony from the children's counselors also supports the order. V.H.'s counselor recommended that Connie's supervised visitation continue. Speaking bluntly, it was the counsellor's clinical opinion that supervised visits with Connie were in V.H.'s best interest. J.H.'s counselor testified that J.H. did not fear either parent and loved both parents very much. The counselor also reported that J.H.'s supervised visit with his mother had gone very well and J.H. would like this case to be over.[27]

Viewing the evidence in the light most favorable to the judgment, the trial court reasonably could have concluded that maintaining supervised visits and limiting Connie's periods of possession were the minimal restrictions necessary to protect the children's best interests. The record reflects that Connie displayed an inability to follow court orders grounded on the children's best interests, secreted the children from Cliff when she shared custody with him, and attempted to alienate the children from Cliff. Alienation of a parent can be a guiding consideration in making possession and access determinations. *See*, *e.g.*, *In re J.W.H.*, No. 14-09-

---

[27] Before rendering judgment, the trial court interviewed J.H., then fourteen years old, in chambers. *See* Tex. Fam. Code § 153.009(a) (requiring the court to interview in chambers children twelve years of age or older on the application of a party to determine the child's wishes as to conservatorship). Connie requested a record of this interview, but it is not included in the record before us. *See id.* at 153.009(f) (requiring a record of the interview to be made on the motion of a party, amicus attorney, or attorney ad litem, or on court's own motion).

00143-CV, 2010 WL 1541679, at *6-7 (Tex. App.—Houston [14th Dist.] Apr. 20, 2010, no pet.) (mem. op.) (affirming trial court's modification order changing which parent had primary custody based in part on evidence parent who originally had primary possession had repeatedly attempted to interfere with other parent's periods of possession); *In re Marriage of Chandler*, 914 S.W.2d 252, 254 (Tex. App.—Amarillo 1996, no writ) (affirming order divesting parent of managing conservatorship due in part to interference with other parent's relationship with child). Both of the children's counselors testified positively about supervised visitations, and V.H.'s counselor explicitly stated that the "structure of the supervised visits provides a level of comfort and stability" for V.H. *See P.A.C.*, 498 S.W.3d at 220 (no abuse of discretion to place restrictions on possession and require visitation remain supervised when mother's mental health status was "uncertain," coupled with concerns that mother would not follow court orders and might damage children emotionally by demeaning their father when alone in her custody).

Finally, the trial court was the sole judge of the credibility of witnesses; its determination that Cliff should be named the sole managing conservatorship and its decision to restrict Connie's access to the children to limited periods of supervised visitation indicate that it did not find Connie to be a credible witness.[28]

Because some evidence of a substantive and probative character supports the trial court's decision, we conclude the trial court did not abuse its discretion by

---

[28] In arguing this sub-issue, Connie compares the trial court's imposition of supervised visitation to cases in which a parent was completely denied possession of and access to the children. *See, e.g.*, *Fish v. Lebrie*, No. 03-09-00387-CV, 2010 WL 5019411, at *8-11 (Tex. App.—Austin Dec. 10, 2010, no pet.) (mem. op.); *In re E.N.C.*, No. 03-07-00099-CV, 2009 WL 638188, at *15-18 (Tex. App.—Austin Mar. 13, 2009, no pet.) (mem. op.); *In re Walters*, 39 S.W.3d 280, 287 (Tex. App.—Texarkana 2001, no pet.). Here, however, Connie was not denied access to her children; instead, the court permitted Connie supervised visitation with the children. Connie's reliance on these cases is thus inapposite.

limiting Connie's possession of J.H. and V.H. and ordering that her visitation be supervised. *See P.A.C.*, 498 S.W.3d at 220. Accordingly, we overrule this portion of Connie's second issue.

## D.     Enforceability of Visitation

Connie also argues that the trial court's custody determination constitutes an abuse of discretion because it empowers Cliff "to determine or defeat any right of access by Connie to her children."

The trial court's order grants Connie supervised possession (1) on Saturdays following the second and fourth Friday of each month, or (2) on days and times mutually agreed by the parties and the supervisor. With respect to either option, Connie must "give deference to and consider the children's schedule, including extracurricular activities, as well as the schedule of the supervisor." The order further provides that Connie's periods of possession "shall NOT interfere with the children's regularly scheduled extracurricular activities."

Connie characterizes the above language as permitting Cliff to unilaterally deny her all access to her children. We reject her interpretation because it conflicts with the order's plain text. Alternatively, Connie asserts that Cliff has viewed the order's language as "*carte blanche* to deny Connie visitation for any basis whatsoever." According to Connie, "any time Connie wants to exercise her minimal visitation rights, Cliff can create an activity in one of the kids' schedules that he can use arbitrarily to prevent visitation." Connie references no record citations to support her contentions as to Cliff's purported interpretation of the order. *See* Tex. R. App. P. 38.1(i). To the extent Connie complains of matters pertaining to post-judgment enforcement, Connie may pursue enforcement or contempt proceedings in the trial court. Cliff's interpretation of, or compliance with, the decree post-judgment is not before us in this appeal.

Connie equates the present order to orders that make one parent's rights of access and possession contingent upon the other parent's approval. *See In re A.P.S.*, 54 S.W.3d 493, 498 (Tex. App.—Texarkana 2001, orig. proceeding) (order allowing father "complete discretion" over mother's possession of children was an abuse of discretion); *In re Lemons*, 47 S.W.3d 202, 206 (Tex. App.—Beaumont 2001, orig. proceeding) (order giving father "complete discretion to determine when, where, and if" mother may have possession or access to child constituted an abuse of discretion); *Roosth v. Roosth*, 889 S.W.2d 445, 451-52 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (trial court's order requiring mother's approval for father's visitation, which was not enforceable by contempt, was erroneous); *Wright v. Wentzel*, 749 S.W.2d 228, 234 (Tex. App.—Houston [14th Dist.] 1988, no writ) (trial court's order making mother's visitation contingent on father's consent was error); *Hill v. Hill*, 404 S.W.2d 641, 643 (Tex. Civ. App.—Houston [1st Dist.] 1966, no writ) (order making father's visitation contingent on mother's prior written consent denied father ability to enforce judgment by contempt and was an abuse of discretion). These cases do not support Connie's position. The decree's language as excerpted above does not make Connie's visitation contingent on Cliff's approval. Further, conspicuously absent from Connie's cited cases is any type of schedule for visitation by the complaining parent; here, the trial court specifically articulated Connie's visitation schedule.

Connie has not demonstrated that the trial court's custody order arbitrarily allowed Cliff to deny Connie visitation without any enforceable rights. Thus, we overrule this portion of Connie's second issue.

## E.     Withdrawal of the Case from the Jury

In this portion of Connie's challenge to the trial court's custody determination, she asserts that "denying Connie's right to a jury trial was an abuse of discretion."

We begin our analysis of this issue by detailing relevant facts surrounding the trial court's decision to conduct a bench trial rather than a jury trial.

### 1. *Relevant factual background*

Cliff filed a jury demand on July 13, 2007, and paid the required jury fee. Although the record does not reflect that Connie filed a jury demand or paid a jury fee, Connie can rely upon another party's proper jury request and therefore acquire the right to a jury trial. *See Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996).

At a pretrial hearing on January 16, 2015, the trial court ordered all parties, including Connie, to appear for pretrial proceedings at 8:30 a.m. on January 20, with trial set to begin with jury selection shortly thereafter. Cliff appeared at 8:30, as did the amicus attorney. Connie did not appear. The court waited on Connie before beginning pretrial proceedings. By 9:00 a.m., Connie had not appeared or contacted the court. Cliff's counsel and the amicus attorney for J.H. and V.H. announced ready for trial. The trial court asked those present whether they had heard from Connie regarding "her failure to appear." Neither Cliff's counsel nor the amicus attorney had heard from Connie. The trial court recessed to start pretrial proceedings off the record.

At 9:15 a.m., the trial court returned to the record, noting that Connie still had not appeared. The court announced that it deemed Connie's non-appearance as a waiver of jury trial. Then, the court clerk informed the judge that Connie had made a "late call" to the court at 9:07 or 9:08 a.m. The record does not reflect what Connie told the clerk. However, the court noted that Connie's late call came long after she was ordered to appear. The court further stated that Connie previously disobeyed orders to appear and was "habitually late," disregarded the pretrial order to exchange exhibits with Cliff's counsel, and "disobeyed the Court's order to appear back in

54

court" to exchange exhibits the previous Friday. At approximately 9:30 a.m., Cliff withdrew his request for a jury trial. Connie still had not appeared, so the trial court provided the parties who were present time to prepare for the bench trial.

At 9:42 a.m., Cliff's counsel and the amicus attorney presented their opening statements. At 9:56 a.m., the court began taking testimony from Cliff. At 10:14 a.m., Connie appeared in the courtroom and announced that she had filed a motion to recuse the trial judge.[29] After a brief discussion, the trial court found that Connie's motion to recuse lacked merit and denied it, then referred the matter to the presiding administrative judge. The trial court recessed the bench trial.

The administrative judge denied Connie's motion to recuse. At approximately 1:30 p.m., the trial court reconvened trial proceedings. At that point, Connie objected "to not having a jury trial." The trial court noted Connie's objection, but proceeded with the bench trial.

## 2. *Applicable law*

One of our "most precious rights," the right to trial by jury occupies "a sacred place in English and American history." *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997). The United States and Texas Constitutions guarantee the right to trial by jury. *See* U.S. Const. art. III, § 2; Tex. Const. art. I, § 15. A party demanding a jury trial must file a written request at least thirty days before trial and pay a fee. Tex. R. Civ. P. 216(a), (b). However, the right to a jury trial may be waived or withdrawn by (a) agreeing to a bench trial, (b) failing to timely pay a jury fee, (c) failing to timely request a jury trial, (d) failing to appear for trial, or (e) failing to object to a bench trial despite a properly perfected request. *In re Wells Fargo*

---

[29] This motion is not in our record, but generally a verified motion to recuse must be filed at least ten days prior to the date set for trial or other hearing. *See* Tex. R. Civ. P. 18a(a).

*Bank Minn. N.A.*, 115 S.W.3d 600, 606-07 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (internal citations omitted). Under Rule 220, "[f]ailure of a party to appear for trial shall be deemed a waiver by [her] of the right to trial by jury." Tex. R. Civ. P. 220. We review the denial of a jury under Rule 220 for an abuse of discretion. *See In re W.B.W., Jr.*, 2 S.W.3d 421, 422 (Tex. App.—San Antonio 1999, no pet.) (applying abuse of discretion standard to waiver of jury trial for party's failure to timely appear); *cf. Mercedes-Benz*, 925 S.W.2d at 666 (reviewing denial of jury demand for abuse of discretion).

    3. *Analysis*

Cliff, as the petitioner, requested a jury trial and paid the jury fee. *See* Tex. R. Civ. P. 216; *see also* Tex. Const. art. V, § 10 ("[N]no jury shall be empaneled in any civil case unless demanded by a party to the case, and a jury fee be paid by the party demanding a jury. . . ."). When one party requests a jury trial and pays the jury fee, all other parties in the suit acquire the right to a jury trial and can rely upon another party's proper jury request. *Mercedes-Benz*, 925 S.W.2d at 666. Thus, Connie, though she did not request a jury or pay the required fee, acquired the right to a jury trial by virtue of Cliff's demand and fee payment. *See id.*

A party who fails to appear at trial after filing an answer waives a right to a jury trial. Tex. R. Civ. P. 220. At least one of our sister courts of appeals has held "a failure to appear at the designated time constitutes a waiver of trial by jury under Rule 220." *Maldonado v. Puente*, 694 S.W.2d 86, 89 (Tex. App.—San Antonio 1985, no writ). In *Maldonado*, the defendants, who timely demanded a jury and paid the fee, arrived in court forty minutes after they were ordered to appear for jury selection. *Id.* at 87-88. The trial court ruled that they failed to appear and deemed their non-appearance a waiver of the right to a jury trial. Noting that the defendants' late appearance was not a "failure to appear," the San Antonio Court of Appeals

nonetheless concluded that the Maldonados' failure to appear at the designated time constituted a waiver of trial by jury under Rule 220. *Id.* Other courts of appeals have agreed that a right to jury trial may be waived by a party's untimely appearance. *See In re T.K.*, No. 09-09-00472-CV, 2010 WL 890657, at *4 (Tex. App.—Beaumont Mar. 11, 2010, no pet.) (mem. op.) (counsel's appearance four hours late deemed waiver of right to jury trial); *cf. Money v. Jones*, 766 S.W.2d 307, 308-09 (Tex. App.—Dallas 1989, writ denied) (trial counsel's refusal to go forward with trial constituted failure to appear and waived right to jury trial).

Connie failed to appear at 8:30 a.m., as ordered. The record reflects that Connie called the court clerk at approximately 9:07, but even Connie's phone call came almost forty minutes after the time the court ordered her to appear and the record does not reveal the substance of Connie's communication to the clerk. No documents contained in our record indicate when Connie arrived at the courthouse. Connie asserts that, before appearing in the courtroom, she went to the district clerk's office to file a motion to recuse the trial judge. Our record does not contain a copy of that motion bearing a file-stamp. Connie did not appear in the courtroom until approximately 10:15, over one and one-half hours late. At that time, Cliff was already testifying. Connie did not object to the bench trial at that time.

Later that afternoon, after the administrative judge overruled Connie's motion to recuse the trial judge, trial proceedings resumed. At that time, Connie objected to proceeding with trial without a jury.

The trial court deemed Connie's failure to appear timely as a waiver of a jury trial. Connie called the court clerk forty minutes after the time she was ordered to appear, and did not actually appear in the courtroom for over another hour. We find the reasoning of the San Antonio Court of Appeals in *Maldonado* persuasive and hold that, under the unique facts of this case, the trial court did not abuse its

57

discretion in deeming Connie's failure to timely appear as a waiver of her right to a jury trial. *See Maldonado*, 694 S.W.2d at 86; *see also* Tex. R. Civ. P. 220; *T.K.*, 2010 WL 890657, at *4 (no error for trial court to conduct bench trial when neither appellant nor her counsel timely appeared for jury selection); *cf. Money*, 766 S.W.2d at 308-09 (trial counsel's refusal to go forward with trial constituted failure to appear and waiver of right to jury trial).[30]

To be sure, the trial court could have declared a mistrial once Connie appeared and objected to the bench trial. But failing to start over with a jury under these facts was not an abuse of discretion. Connie repeatedly proved herself unable or unwilling to manage her schedule or affairs in such a way as to ensure compliance with the court's orders, including orders to appear timely in court. The court was entitled to take Connie's dilatory history into account in exercising its discretion whether—and if so, for how long—to wait for Connie to appear for trial. The trial court has authority to impose consequences for a party's failure to appear timely for trial. *See* Tex. R. Civ. P. 220. The judge, not the litigant, controls the trial court docket. In light of the surrounding circumstances, we cannot say that the trial court abused its discretion by proceeding with a bench trial. *See In re D.R.*, 177 S.W.3d 574, 580 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (objection to bench trial untimely; perfected right to jury trial waived); *see also W.J.B.*, 2016 WL 1267847, at *5; *In re W.G.O., III*, No. 02-12-00059-CV, 2013 WL 105661, at *2 (Tex. App.— Fort Worth Jan. 10, 2013, pet. denied) (mem. op.); *Walker v. Walker*, 619 S.W.2d

---

[30] Connie relies on *Cardenas v. Montfort, Inc.*, 894 S.W.2d 406, 408 (Tex. App.—San Antonio 1994), *writ denied*, 924 S.W.2d 156 (Tex. 1996) (per curiam) ("We find no error in the judgment of the court of appeals. However, we neither approve nor disapprove its opinion."). But the facts of *Cardenas* differ from the present facts. Cardenas appeared timely and there was no explanation on the record regarding the withdrawal of the case from the jury docket. *Id.* Here, in contrast, Connie did not appear timely, and the trial court explained its decision to construe her failure to appear as a waiver of her right to a jury.

58

196, 198 (Tex. Civ. App.—Tyler 1981, writ ref'd n.r.e.). Our holding should not be construed to suggest that the passage of any particular amount of time is necessary or sufficient before a trial court may deem a party's failure to appear timely as a waiver of a jury trial.

We overrule this portion of Connie's second issue.

## F. The MSA

In her final attack on the trial court's conservatorship decision, Connie asserts that the trial court abused its discretion by refusing to grant Connie the custody rights contained in the parties' MSA. Connie contends the decree amounts to a refusal to enforce the MSA based on a best interest determination, which the Texas Supreme Court prohibited in *In re Lee*, 411 S.W.3d 445 (Tex. 2013) (orig. proceeding). We disagree.

In *Lee*, the Supreme Court of Texas addressed whether a trial court abuses its discretion if it denies a motion to enter a judgment on a statutorily compliant MSA based on an inquiry whether the MSA terms are in a child's best interest. *Id*. at 447. After the parties in *Lee* signed the MSA, the mother filed a motion to enter judgment on the MSA, and the father objected on the grounds that the MSA was not in the child's best interest. *Id*. at 448. After a hearing, the trial court ruled that the MSA was not in the child's best interest and denied the mother's motion to enter judgment. *Id*. The Texas Supreme Court conditionally granted the mother's petition for writ of mandamus and held that "a trial court may not deny a motion to enter judgment on a properly executed MSA under [Family Code] section 153.0071 based on a broad best interest inquiry." *Id*. at 457-58.

In her appellant's brief, Connie asserts that she "moved repeatedly that [the MSA] be enforced." According to the record, Connie took inconsistent positions on

whether the MSA was enforceable. On one hand, after the MSA was signed in January 2014, Connie filed a motion to set aside the MSA on the grounds that (1) she had "been a victim of family violence and that circumstances surrounding the family violence impaired her ability to make decisions" and the MSA was not in the best interest of the children, and (2) there "has been a change in circumstances since the signing of the mediated agreement."[31] On the other hand, Connie also points to what purports to be a copy of a "Motion to Enter the Mediated Settlement Agreement and for Full Compliance," bearing a file stamp of January 14, 2015 at 7:33 p.m., though this motion is not contained in the clerk's record. To the extent Connie filed a motion to enter judgment on the MSA in the trial court, it is not clear from the record that Connie properly and timely presented that motion for ruling to the trial court in compliance with the rules of procedure.[32] On March 27, 2015, the hearing date for entry of judgment, Connie filed in our court a petition for writ of mandamus arguing that the trial court abused its discretion in rendering judgment inconsistent with the custody provisions of the MSA and requesting this court to stay the entry of judgment hearing.[33] This court denied mandamus relief. During the entry of judgment hearing, Connie objected to the proposed final decree on the grounds that it was inconsistent with the MSA.

We presume for argument's sake that Connie requested entry of judgment based on the MSA. *Lee*, however, does not support Connie's argument that the trial court abused its discretion in signing the March 2015 final decree containing child

---

[31] The trial court denied Connie's motion, however, and signed the Interim Order incorporating the MSA terms.

[32] Based on our review of the record, it appears Connie attempted to argue the motion at the January 16, 2015 pre-trial conference, but she had not set the motion for hearing or provided proper notice to all counsel, so the trial court refused to consider it at that time.

[33] *See In re Harrison*, 2015 WL 3637497, at *1.

custody provisions that varies from the January 2014 MSA. As the Supreme Court characterized the issue in *Lee*, "[t]he sole issue before us today is whether a trial court presented with a request for entry of judgment on a validly executed MSA may deny a motion to enter judgment based on a best interest inquiry." *Id*. at 450. The trial court in *Lee* refused to enforce MSA terms based on the court's determination that those terms, given the factual circumstances existing when the MSA was signed, were not in the child's best interest. *Id*. at 447-48. The Supreme Court of Texas held that a trial judge has no discretion to refuse to enter judgment on an MSA based solely on the court's determination that the agreed custody terms are not in the child's best interest because Family Code section 153.0071 does not grant trial courts the option to deny judgment on that basis. *Id*. at 457-58.

The circumstances in *Lee* are fundamentally different from those presented here. In contrast to *Lee*, this is not a situation where the trial court refused to enforce a validly executed MSA because, in the court's view, the custody terms contained therein were not in the children's best interest. Rather, the trial court incorporated the MSA terms into the Interim Order it signed in April 2014. From April until September 2014, the parties shared custody of the children under the Interim Order.[34] Thereafter, and based on events occurring after the MSA was signed and after the entry of the Interim Order—including the trial court's findings that Connie materially failed to comply with the MSA terms to the children's detriment—Cliff amended his petition to allege that a material and substantial change had occurred and the custody terms (which were incorporated into the Interim Order) were no longer consistent with the children's welfare. Cliff moved for temporary orders on parent-child issues, which the trial court granted on September 3, 2014, signing an

---

[34] The MSA terms pertained to custody issues only and the Interim Order remained in effect while the parties continued efforts to resolve property division matters.

order that day. Pursuant to these orders, the trial court removed Connie as a joint managing conservator of J.H. and V.H., and appointed Cliff temporary sole managing conservator.

This is a case where the trial court signed orders incorporating the terms of an MSA, but was subsequently presented with amended pleadings and a motion to modify the orders based on changed circumstances and found that modification was in the children's best interest. We think this case is more akin to those in which parties have entered into an MSA prior to divorce, but, based on allegations and evidence of a material or substantial change in circumstances, modification of conservatorship becomes necessary to protect the child's best interest after the divorce. *Cf.* Tex. Fam. Code § 156.101(a)(1) (providing that a trial court may modify a conservatorship order if modification would be in the children's best interest and "the circumstances of the child, a conservator, or other party affected by the order have materially or substantially changed" since "the date of the signing of a mediated or collaborative law settlement agreement on which the order is based"); *In re M.G.N.*, 491 S.W.3d 386, 391, 403 (Tex. App.—San Antonio 2016, pet. denied) (noting that, in a modification of custody case, "the focus is on the best interest of the child and on material or substantial changes of the circumstances of the child, a conservator or other party affected by the order"); *Branham v. Davenport*, No. 01-11-00992-CV, 2013 WL 5604736, at *1-2, 5 (Tex. App.— Houston [1st Dist.] Oct. 10, 2013, no pet.) (mem. op.) (same). *Lee* acknowledges that such modifications may be appropriate based on changed circumstances following entry of orders based on an MSA. *See Lee*, 411 S.W.3d at 456-57 & n.14 (plurality op.) ("Even after issuing a final order, a trial court may act to protect the safety and welfare of a child by issuing protective orders, by issuing temporary orders during an appeal, by ruling on motions to modify, or through habeas corpus

proceedings, again upon proper motion."). Connie would have this court ignore the subsequent temporary orders—precipitated by substantially changed circumstances after the MSA—and return to previous orders that had proven unworkable due to Connie's repeated violations. The challenged order in *Lee* was not based on allegations or evidence that a party violated MSA terms that the party simultaneously sought to enforce.

We also disagree with Connie that our ruling in the present matter conflicts with this court's decision in *In re Minix*, 543 S.W.3d 446 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). The issue in *Minix* was whether parties to a validly executed MSA could agree to set it aside. *Id*. at 451. Connie and Cliff did not agree to set aside the MSA. Also, though Connie at one time purported to withdraw consent to the MSA based on an assertion of family violence, our ruling today is not based on any parties' withdrawal of consent to the MSA but rather on the trial court's discretion to modify custody provisions based on a party's failure to comply with MSA terms in a manner detrimental to the children.

Based on the record before us, we conclude that *Lee* is not controlling because the record does not show that the trial court denied a motion to enter judgment on the MSA based on a broad best interest inquiry. Further, Connie has not shown that, once the trial court issued orders incorporating the MSA, it lacked authority to modify those orders on Cliff's motion based on events occurring after the MSA and further temporary orders were signed. Under these circumstances, we conclude that the trial court acted within its discretion when it incorporated the terms of the MSA into the Interim Order, which the court then modified on Cliff's motion after determining that the children's safety and welfare required the modification.

* * *

For all of the foregoing reasons, Connie has not established that the trial court abused its discretion in making its conservatorship, possession, and access orders. We accordingly overrule Connie's second issue.

## Division of the Marital Estate

In her third and final issue, Connie claims that the trial court abused its discretion in dividing the marital estate (the "Cedar Creek Home"). In a divorce decree, the trial court "shall order a division of the estate of the parties in the manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001. A "just and right" division does not require a trial court to divide the marital estate into equal shares. *See Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981); *see also Marin v. Marin*, No. 14-13-00749-CV, 2016 WL 1237847, at *2 (Tex. App.—Houston [14th Dist.] Mar. 29, 2016, no pet.) (mem. op.). We review the trial court's property division for an abuse of discretion; to disturb a trial court's division of property, a party "must show the trial court clearly abused its discretion by a division or an order that is manifestly unjust and unfair." *Stavinoha*, 126 S.W.3d at 607.

The trial court awarded the Harrisons' former marital home to Cliff. The trial court also divided other marital assets, including the proceeds from Cliff's 401(k) retirement account,[35] household items, jewelry and other personal effects, the cash in the possession of the parties, and a vehicle. Connie asserts that the award of the home was an abuse of discretion. Connie's brief focuses on her complaint that the trial court mischaracterized seventy percent of the home's value as Cliff's separate

---

[35] Cliff was awarded $67,532, plus increases since the parties' divorce, from this account, whereas Connie was awarded $183,468, plus increases since the parties' divorce, from Cliff's 401(k) retirement account.

property. According to Connie, Cliff failed to overcome the community property presumption as to that asset.

We employ a two part test when reviewing alleged characterization errors. *Vasudevan v. Vasudevan*, No. 14-14-00675-CV, 2015 WL 4774569, at *1 (Tex. App.—Houston [14th Dist.] Aug. 13, 2015, no pet.) (mem. op.). Under this test, Connie must show both a characterization error and harm—i.e., a division or an order that is manifestly unjust and unfair. *See id.* Thus, we need not reverse a trial court's division of property when the party claiming a mischaracterization fails to show how the erroneous characterization of community property as separate property caused the trial court to abuse its discretion in dividing the marital estate. *See Lynch v. Lynch*, 540 S.W.3d 107, 133 (Tex. App.—Houston [1st Dist.] 2017, pet. filed); *Palaez v. Juarez*, No. 04-14-00022-CV, 2014 WL 7183483, at *4 (Tex. App.—San Antonio Dec. 17, 2014, pet. denied) (mem. op.) (refusing to reverse husband's mischaracterization issue because husband did not attempt to show how mischaracterization caused trial court to err in overall division of community estate); *Vasudevan*, 2015 WL 4774569, at *4; *In re Marriage of McNelly*, No. 14-13-00281-CV, 2014 WL 2039855, at *7 (Tex. App.—Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.) ("Mischaracterization of community property as separate property is harmful and requires reversal only if the mischaracterization affects the just and right division of the community estate.").

Assuming Connie is correct that the trial court mischaracterized seventy percent of the marital home's value as Cliff's separate property, the record does not support Connie's assertion that the trial court's ruling resulted in an overall division of the marital estate that was not "just and right." *See* Tex. Fam. Code § 7.001. To determine whether the trial court divided the community estate in a "just and right" manner, we must have the trial court's findings on the value of those assets.

*Vasudevan*, 2015 WL 4774569, at *4. "Without findings of fact, we do not know the basis for the division, the values assigned to the community assets, or the percentage of the marital estate that each party received." *Id.* Here, the trial court did not file findings of fact and conclusions of law reflecting the value the court assigned to each community asset or liability, the value of the community property, or the factors the trial court considered in dividing the marital estate.[36]

Because we have no findings of fact, Connie has not made the requisite showing that the purported mischaracterization of the home led to a division of the marital estate that was not just and right. *See Lynch*, 540 S.W.3d at 133; *see also Vasudevan*, 2015 WL 4774569, at *4 ("Because we do not know what value the trial court assigned to the community property assets or the percentage of the property awarded to each party, we cannot conclude that the trial court abused its discretion in dividing the community property."); *Marriage of McNelly*, 2014 WL 2039855, at *7.[37] Although Connie characterizes as material the difference between the overall community estate's value if seventy percent of the home is Cliff's separate property versus the estate's value if the house is one hundred percent community, without evidence of the value of all the community assets we have no way to determine whether the trial court's award to Connie of other community assets did not result in

---

[36] Connie does not challenge the trial court's failure to sign findings and conclusions. Our review of the record indicates that Connie filed a request for findings of fact and conclusions of law on April 14, 2015, which was within twenty days after the trial court signed the judgment. *See* Tex. R. Civ. P. 295. But Connie's notice of past due findings was not filed until June 9, 2015, which was past the deadline to file such a notice. *See* Tex. R. Civ. P. 297 (requiring a party to file a notice of past due findings "within thirty days after filing the original request"); *see also Hardin v. Hardin*, 161 S.W.3d 14, 20 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (explaining that untimely filing of notice of past due findings results in waiver of any complaint that trial court failed to issue findings).

[37] Cliff's 2010 inventory is contained in our record. But inventories "that assign values to the community property assets cannot serve as a substitute for findings of fact by the trial court." *Vasudevan*, 2015 WL 4774569, at *4 (citing *Funderburgh v. Funderburgh*, No. 12-08-00428-CV, 2010 WL 2982906, at *2 (Tex. App.—Tyler July 30, 2010, no pet.) (mem. op.)).

a just and right division given the totality of the circumstances. In short, because Connie did not establish that the trial court abused its discretion in dividing the marital estate, we overrule her third and final issue.

## Conclusion

Connie has not established that the trial court abused its discretion in permitting her trial counsel to withdraw without granting a trial continuance, naming Cliff sole managing conservator of the Harrisons' two children, and dividing the marital estate. Having overruled each of Connie's issues, we affirm the trial court's judgment.

/s/     Kevin Jewell
          Justice

Panel consists of Justices Christopher, Busby, and Jewell.