

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00281-CV

## IN THE MATTER OF THE MARRIAGE OF
## ERIN SAMANTHA HUNTER AND JEREMY MARK HUNTER
## AND IN THE INTEREST OF
## M.S.H.,[1] E.P.H. AND N.R.H.

### From the 52nd District Court
### Coryell County, Texas
### Trial Court No. DC-20-51312

## MEMORANDUM OPINION

Appellant Jeremy Mark Hunter (Mr. Hunter) appeals the trial court's final order of divorce. We will affirm.

### Issues

Mr. Hunter, appearing pro se, presents the following issues:

1. Did the trial court error [sic] by appointing the Petitioner [Mrs. Hunter] over 80% of the joint assets and less than 20% of the joint debt (debt in both parties [sic] names), and compounded the discrepancy with awarding the Petitioner $500 per month of spousal maintenance and the Respondent's entire Thrift Savings

---

[1] At the time the petition for divorce was filed, M.S.H. was under the age of eighteen years but emancipated prior to the rendition of judgment by the trial court.

Plan based on the Petitioner's misrepresentation of facts in the Petitioner's *Proposed Property Division* (Appendix Exhibit D)?

2. Did the trial court error [sic] and act in a biased unfair manner by awarding 80% of the joint debt in both parties [sic] names to the Respondent? (Tex. Fam. Code Ann. §6.707)

3. Did the trial court error [sic] by not hearing the Respondent's *Motion for Order due to a Substantial Change in Circumstances* and award the Petitioner Child Support in arrearage of $6,797.36 along with interest?

4. Did the trial court error [sic] by awarding a judgement [sic] that was not fully supported by evidence and testimony?

5. Did the trial court error [sic] by not considering evidence and testimony of the Respondent?

6. Should the trial court, or should this court, provide meaningful relief by reassessing the vast discrepancy in the joint asset and debt awarded and immediately end the $500 per month spousal maintenance and Child Support in arrearage payments? (Tex. Fam. Code Ann §6.707)

7. Did the trial court error [sic] by allowing E.P.H., a minor of 16 years of age, to agree on access and possession with all other terms provided in a Standard Possession Order being agreed upon by the parties?

8. Did the trial court error [sic] by allowing Erin Samantha Hunter to designate primary residence of the children without geographical restriction?

### Findings of Fact and Conclusions of Law

The trial court entered the following findings in the present case:

*Findings of Fact – Divorce*

1. ERIN SAMANTHA HUNTER, Petitioner, and JEREMY MARK HUNTER, Respondent, were married on May 20, 2000.

. . .

*Findings of Fact – SAPCR*

. . .

5.      It is in the best interest of the children that ERIN SAMANTHA HUNTER and JEREMY MARK HUNTER be appointed joint managing conservators of the children and that ERIN SAMANTHA HUNTER have the right to designate the children's primary residence.

. . .

*Findings of Fact – Child Support*

7.      The amount of child support ordered by the Court is in accordance with the percentage guidelines.

8.      The net resources of JEREMY MARK HUNTER per month are $5,206.54.

9.      The net resources of ERIN SAMANTHA HUNTER per month are $1,452.72.[2]

10.     The percentage applied to the first $9,200 of JEREMY MARK HUNTER'S net monthly resources for child support is 25 percent.

*Findings of Fact - Spousal Maintenance*

11.     ERIN SAMANTHA HUNTER will lack sufficient property, including her separate property, on dissolution of the marriage to provide for her minimum reasonable needs.

12.     The duration of the marriage was ten years or longer, and ERIN SAMANTHA HUNTER lacks the ability to earn sufficient income to provide for her minimum reasonable needs.

13.     ERIN SAMANTHA HUNTER has exercised diligence in developing the necessary skills to provide for her minimum reasonable

---

[2] Mrs. Hunter's Exhibit 10 indicates that $1,452.72 is the amount of her *gross* resources.  Her net resources are even less -- $1,301.30.

needs during a period of separation and during the time the suit for dissolution of marriage was pending.

14.    The following factors were taken into consideration in determining the nature, amount, duration, and manner of periodic payments: primary conservatorship of the children; each spouse's ability to provide for their minimum reasonable needs independently considering each spouse's financial resources on dissolution of the marriage; the education and employment skills of the spouses, the duration of the marriage, acts by JEREMY MAK [sic] HUNTER resulting in excessive or abnormal expenditures, and marital misconduct.

15.    ERIN SAMANTHA HUNTER and JEREMY MARK HUNTER were married for at least twenty years but not more than thirty years.

16.    The net resources of JEREMY MARK HUNTER per month are $5,206.54.

*Findings of Fact – Division of Community Estate*

17.    ERIN SAMANTHA HUNTER and JEREMY MARK HUNTER accumulated both real property and personal property since the date of marriage. ERIN SAMANTHA HUNTER and JEREMY MARK HUNTER accumulated secured and non-secured debt since the date of marriage.

**Standard of Review**

We use an abuse-of-discretion standard when reviewing a trial court's ruling on issues related to divorce including division of the community estate, spousal maintenance, child support, and conservatorship which includes custody, access, and the exclusive right to determine a child's primary residence as well as what is in the best interest of a child in relation to those matters. *See In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (conservatorship; best interest); *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (community estate); *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (child support); *In re Marriage of Elabd*, 589 S.W.3d 280, 283-84 (Tex. App.—Waco 2019, no pet.) (spousal

maintenance). "A trial court abuses its discretion when it acts 'without reference to any guiding rules or principles, or in other words; [when it acts] arbitrarily or unreasonably.'" *J.J.R.S.*, 627 S.W.3d at 218 (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)).

The trial court, as the finder of fact in a bench trial, is in the best position to determine the candor, demeanor, and credibility of the witnesses. *Elabd*, 589 S.W.3d at 288. "[W]e defer to the trial court's resolution of underlying facts and to the credibility determinations that may have affected its decision." *Id*. An abuse of discretion generally does not occur when a trial court bases its decision on conflicting evidence. *Id*. It is within the fact finder's province to resolve such conflicts in the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005).

When applying an abuse-of-discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but are factors used in assessing whether the trial court abused its discretion. *Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support the trial court's judgment." *Id*. "To constitute an abuse of discretion, the trial court's division of the property must be manifestly unfair." *Elabd*, 589 S.W.3d at 287. If findings are challenged, they are not determinative unless supported by the record. *Brejon v. Johnson*, 314 S.W.3d 26, 30 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

> In order to determine whether a trial court abused its discretion because the evidence was insufficient to support its decision, we consider: (1) whether the trial court had sufficient evidence upon which to exercise its discretion; and (2) whether it erred in its application of that discretion. *Bush v. Bush*, 336 S.W.3d 722, 729 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We conduct the sufficiency review using the appropriate standards for legal and factual sufficiency when considering the first prong of the test. *Bush*, 336 S.W.3d at 729. We then determine whether, based on the evidence presented at trial, the trial court made a reasonable decision. *In the Interest of S.T.*, 508 S.W.3d 482, 489 (Tex. App.—Fort Worth 2015, no pet.).

*In re Marriage of Durham*, No. 10-19-00199-CV, 2021 WL 837348, at *3 (Tex. App.—Waco Mar. 3, 2021, no pet.) (mem. op.).

### Issues One, Two, Four, Five, and Six

These issues relate to sufficiency of the evidence in the division of community assets and debts, the imposition of spousal maintenance, and the amount awarded in child support.

AUTHORITY

Section 7.001 of the Family Code provides: "In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001.

> In determining whether the division of the community estate is equitable, the trial court may consider the following non-exclusive factors: (1) the spouses' capacities and abilities; (2) benefits that the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) education; (5) physical conditions of the parties; (6) the relative financial conditions and obligations of the parties; (7) size of the separate estates; (8) the nature of the property; (9) disparities in earning

capacities and income; (10) the fault of the breakup of the marriage; and (11) any wasting of the community assets by one of the spouses.

*Elabd*, 589 S.W.3d at 287–88.

Section 8.051 provides:

In a suit for dissolution of a marriage or in a proceeding for maintenance . . . the court may order maintenance for either spouse only if the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's minimum reasonable needs and:

. . .

     (2) the spouse seeking maintenance:

. . .

       (B) has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs. . . .

TEX. FAM. CODE ANN. § 8.051.

Section 8.052 provides:

A court that determines that a spouse is eligible to receive maintenance under this chapter shall determine the nature, amount, duration, and manner of periodic payments by considering all relevant factors, including:

     (1) each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage;

     (2) the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to earn sufficient income, and the availability and feasibility of that education or training;

     (3) the duration of the marriage;

(4) the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance;

(5) the effect on each spouse's ability to provide for that spouse's minimum reasonable needs while providing periodic child support payments or maintenance, if applicable;

(6) acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property, joint tenancy, or other property held in common;

(7) the contribution by one spouse to the education, training, or increased earning power of the other spouse;

(8) the property brought to the marriage by either spouse;

(9) the contribution of a spouse as homemaker;

(10) marital misconduct, including adultery and cruel treatment, by either spouse during the marriage; and

(11) any history or pattern of family violence, as defined by Section 71.004.

*Id.* § 8.052.

Spousal maintenance is an award of "periodic payments from the future income of one spouse for the support of the other spouse." TEX. FAM. CODE ANN. § 8.001(1) (West 2006). The purpose of spousal maintenance is "to provide temporary and rehabilitative support for a spouse whose ability to self-support is lacking or has deteriorated over time while engaged in homemaking activities and whose capital assets are insufficient to provide support." *O'Carolan v. Hopper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.).

*Elabd*, 589 S.W.3d at 283.

In determining child support, Section 154.125 provides:

[T]he court shall presumptively apply the following schedule in rendering the child support order:

CHILD SUPPORT GUIDELINES
BASED ON THE MONTHLY NET RESOURCES OF THE OBLIGOR

1 child          20% of Obligor's Net Resources
2 children      25% of Obligor's Net Resources

TEX. FAM. CODE ANN. § 154.125.

Section 154.131 further provides:

(a) The child support guidelines are intended to guide the court in determining the amount of retroactive child support, if any, to be ordered.

(b) In ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period and whether:

. . .

    (3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and

    (4) the obligor has provided actual support or other necessaries before the filing of the action.

*Id.* § 154.131.

DISCUSSION

Many of Mr. Hunter's complaints revolve around his assertion that the trial court did not consider his testimony or exhibits. The findings of fact reflect that the evidence and testimony of both spouses were considered by the trial court. Determining the credibility of the witnesses and the exhibits is within the purview of the trial court, and the trial court's determination that Mrs. Hunter's evidence and testimony were more credible is not an indication that Mr. Hunter's evidence and testimony were not considered. *See Elabd*, 589 S.W.3d at 284.

The trial court's division of the community assets and debts was not manifestly unfair considering the relative income and future earning capacity of the parties. *See id*. at 287. During the majority of the marriage, Mr. Hunter was in the military, and Mrs. Hunter was the primary caretaker of the children during Mr. Hunter's numerous deployments.

Mr. Hunter possesses a master's degree and left the military for a job in the private sector with a gross monthly salary of $7,500.00. Mrs. Hunter has an associate degree and works as a teacher's aide with a gross monthly income of $1,452.72.

The Hunters acquired two residences while married: the marital residence in Copperas Cove, where Mrs. Hunter lived with the children, and a residence in Wisconsin used for rental income. Mrs. Hunter was awarded the marital residence, and Mr. Hunter was awarded the Wisconsin property, with each responsible for the mortgage on the respective property.

The trial court found that the marital home was valued at $204,000.00, which is the average between the value assessed by the Coryell County appraisal district and the value assessed by a computer real estate agency as presented by Mr. Hunter. The marital residence had an outstanding mortgage of $139,190.90 (Mr. Hunter's Exhibit 15).[3] Thus, the equity would have been approximately $65,000.00. Mrs. Hunter's

---

[3] Mr. Hunter argues that he has post-decree evidence that establishes that the marital home was sold for $266,00.00 in May 2022. Such evidence is not part of the record and may not be considered by the appellate court. *In re Marriage of Harrison*, 557 S.W.3d 99, 106 n.2 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Exhibit 10 reflects that the monthly mortgage on the marital home was $1,264.79, an amount that almost equaled her gross monthly income.

Mr. Hunter was awarded the Wisconsin property that was valued at $117,100.00 and had an outstanding mortgage amount of $63,327.50. (Mr. Hunter's Exhibit 1). The mortgage payment is $830.00 per month. The equity would have been $53,772.50. The property was used as rental property, and all future rentals will go to Mr. Hunter.

Mrs. Hunter received the amounts in two bank accounts while Mr. Hunter received the amounts in four separate accounts. Mrs. Hunter also received approximately $4,500 from Mr. Hunter's thrift savings plan that arose out of his employment with the United States Army. After the divorce was filed, Mr. Hunter deposited his paychecks into an account that was not accessible to Mrs. Hunter.

Both Mr. and Mrs. Hunter acquired student loans during their marriage, and Mrs. Hunter acquired a separate student loan after their separation. Each party is held responsible for their own student loans. Both spouses also incurred significant credit card debt. Mr. Hunter was held accountable for approximately twice as much debt as Mrs. Hunter. However, the bulk of that debt consists of Mr. Hunter's student loans and a joint Visa card that was used exclusively by Mr. Hunter after the divorce was filed to fund his expenses in Maryland both before and after he moved from Texas.

In addition to the foregoing, there is more than sufficient evidence in the record to support the trial court's decision to order spousal maintenance for Mrs. Hunter. Mr. and Mrs. Hunter were married for over twenty years and Mrs. Hunter "lacks the ability to earn sufficient income to provide for [her] minimum reasonable needs." TEX. FAM.

CODE ANN. § 8.051. Additionally, the factors to be evaluated under Section 8.052 support the amount and duration of the spousal maintenance, $350.00 per month for three years, considering the "excessive or abnormal expenditures" of community assets by Mr. Hunter to fund his post-separation lifestyle in Maryland. *Id.* at § 8.052(6). Mr. Hunter spent approximately $8,800.00 from a community account and bank card in Maryland. That amount was only for expenditures between February and June of 2021, although Mr. Hunter did not move to Maryland until the end of May 2021. After June, Mr. Hunter charged everything to the bank card rather than taking funds directly from the joint account. Mrs. Hunter was unable to ascertain the exact charges made after June. Mr. Hunter additionally received approximately $4,000.00 when he retrieved a vehicle that was purchased with community assets from the couple's eldest daughter and returned it to the dealership.

Mrs. Hunter paid for major repairs that were required to be made on the marital home while the divorce was pending.

Mr. Hunter argues that Mrs. Hunter is underemployed considering her education and background. Evidence was presented regarding Mrs. Hunter's capabilities and her ability to increase her income. The court's findings on these issues also depended upon the trial court's assessment of the credibility of the witnesses. *See Elabd*, 589 S.W.3d at 284.

Finally, the trial court did not abuse its discretion in setting child support at $1,302 per month based upon evidence of the relative income and expenses of the parties. Nor did the trial court abuse its discretion in determining that the amount of

the child support arrearage was $6,797.36, including interest. Mr. Hunter stopped making child support payments in August 2021 and made only a partial payment in July 2021 in disregard of the agreed temporary orders. Mr. Hunter's Issues One, Two, Four, Five, and Six are overruled.

## Issue Three

Mr. Hunter asserts various problems related to the temporary orders that were entered in this case.

AUTHORITY

Issues regarding temporary orders become moot when the trial court enters a final order. *In re C.A.*, No. 10-16-00351-CV, 2021 WL 409621, at *4 (Tex. App.—Waco Feb. 3, 2021, no pet.) (mem. op.). "It is well-settled that a temporary order is superseded by entry of a final order, rendering moot any complaint about the temporary order." *In re B.W.S.*, No. 05-20-00343-CV, 2022 WL 2712494, at *4 (Tex. App.—Dallas July 13, 2022, no pet.) (mem. op.); *see also Vara v. Vara*, 645 S.W.3d 818, 823 (Tex. App.—El Paso 2022, pet. denied) (entry of final order moots temporary order); *In re J.G.*, 587 S.W.3d 25, 31 (Tex. App.—Tyler 2018, no pet.) (temporary order superseded by entry of final order rendering moot complaints about temporary order); *Barnes v. Crawley*, No. 09-20-00224-CV, 2022 WL 2068856, at *5 (Tex. App.—Beaumont June 9, 2022, no pet.) (mem. op.).

DISCUSSION

Because a final order of divorce was entered, Mr. Hunter's complaints regarding the temporary orders are moot. We overrule Issue Three.

## Issues Seven and Eight

Mr. Hunter's final issues concern access to E.P.H. and Mrs. Hunter's authority to designate the primary residence of the minor children without geographical limitation.

AUTHORITY

The primary consideration of the court in determining issues of conservatorship and possession of and access to a child is the best interest of the child, and the trial court is given great latitude in determining what is the best interest of a minor child. TEX. FAM. CODE ANN. § 153.002; *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

> The court presumes that appointment of parents as joint managing conservators is in the best interest of the child. *See* TEX. FAM. CODE § 153.131. "Joint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators." *Id*. § 153.135. Similarly, the court must specify the rights and duties of conservatorship that each parent may exercise, and it is not required to award these rights equally or require that they be exercised jointly. *See id*. § 153.071; *Stillwell v. Stillwell*, No. 03-17-00457-CV, 2018 WL 5024022, at *4 (Tex. App.—Austin Oct. 17, 2018, pet. denied) (mem. op.). When parents are appointed joint managing conservators, the court must designate the parent "who has the exclusive right to determine the primary residence of the child," either with or without geographic limitations. TEX. FAM. CODE § 153.134(b)(1).

*Wright v. Berger*, No. 01-18-00964-CV, 2020 WL 1917839, at *5 (Tex. App.—Houston [1st Dist.] Apr. 21, 2020, no pet.) (mem. op.).

> Trial courts have broad discretion to determine what is in a child's best interest. *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). Similarly, trial courts have broad discretion in determining whether to specify a geographic limitation on a child's primary residence. *In re K.L.W.*, 301 S.W.3d 423, 428 (Tex. App.—Dallas 2009, no pet.). The trial court is in the best position to observe the witnesses and "can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record," and we will not disturb the trial court's order on appeal unless the complaining party establishes a clear abuse of discretion. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (trial

> court's determinations on conservatorship and child support are reviewed for abuse of discretion).

*Morris v. Veilleux*, No. 03-20-00385-CV, 2021 WL 4341967, at *2 (Tex. App.—Austin Sept. 24, 2021, no pet.) (mem. op.).

DISCUSSION

In his seventh issue, Mr. Hunter challenges the trial court's determination that possession of and access to E.P.H. will be as agreed by E.P.H. The trial court heard the testimony of E.P.H.'s counselor who testified that forcing E.P.H. to comply with standard visitation would be damaging to her.

The primary consideration for the trial court is the best interest of the child, not the parent's. TEX. FAM. CODE ANN. § 153.002; *see also Coburn v. Moreland*, 433 S.W.3d 809, 824 n.16 (Tex. App.—Austin 2014, no pet.) ("As illustrated by the biblical story of wise King Solomon, the desires and best interests of a parent should yield to the welfare and best interests of a child when those interests are in conflict."). The trial court did not abuse its discretion in finding that it was in E.P.H.'s best interest for E.P.H. to control access to and possession of her by Mr. Hunter. Mr. Hunter's Issue Seven is overruled.

Mr. Hunter's eighth issue asserts that the trial court erred in appointing Mrs. Hunter as the parent with the authority to designate the children's residence without geographic limitation. Other than listing this issue in the "Issues Presented" section of his brief, Mr. Hunter does not argue this issue in the argument section nor cite to any authority to support his position. Accordingly, we conclude that Issue Eight is

inadequately briefed and is overruled. *See* TEX. R. APP. P. 38.1(i); *see also In re Marriage of Stivers*, No. 10-17-00271-CV, 2018 WL 5054373, at *4 (Tex. App.—Waco Oct. 17, 2018, no pet.) (mem. op.).

## Conclusion

Having overruled all of Mr. Hunter's issues, we affirm the judgment of the trial court.


MATT JOHNSON
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed October 12, 2022
[CV06]

